476 So.2d 970 (1985)
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION & DEVELOPMENT
v.
SUGARLAND VENTURES, INC.
No. 84 CA 0842.
Court of Appeal of Louisiana, First Circuit.
October 8, 1985.
Writ Denied November 22, 1985.
*972 Grady C. Weeks and William A. Stark, Houma, for State of Louisiana, Dept. of Transp. & Development.
Andrew Reed, Aycock, Horne, Caldwell & Coleman, Morgan City, and Oscar E. Reed, Jr., Broadhurst, Brook, Mangham, Hardy & Reed, for Sugarland Ventures, Inc., defendant.
R. Scott Ramsey, Jr., McElroy & Ramsey, Berwick, for Frank C. Orlando, Jr. and John V. Orlando, intervenors.
Before EDWARDS, LANIER and JOHN S. COVINGTON, JJ.
JOHN S. COVINGTON, Judge.
The instant litigation had its genesis as a Title 19 expropriation proceeding brought by the State of Louisiana (state), through the Department of Transportation & Development (DOTD), against Sugarland Ventures, Inc. (Sugarland). Appellants, Frank and John Orlando (the Orlandos), intervened in the original suit and eventually obtained a final judgment granting them an award of compensation, which the state legislature later refused to pay. The Orlandos herein appeal an adverse judgment rendered in their subsequent suit for declaratory relief.
We affirm.
On September 2, 1981, the state filed a petition for expropriation against Sugarland, seeking the ownership (reserving unto Sugarland the mineral rights) of three parcels of land located near a St. Mary Parish airport. The purpose of the expropriation, brought under the authority of LSA-R.S. 19:1 et seq., was to comply with Federal Aviation Administration requirements involved in the extension of an airport runway. The Orlandos intervened in the expropriation proceeding, seeking an award of compensation from the state based on their contract with Sugarland allowing them to haul dirt from portions of the subject property. As neither Sugarland nor the Orlandos contested the state's right to expropriate, the only issue at trial was the proper amount of compensation, if any, owed to each. After trial on the merits, the trial judge signed a judgment on March 5, 1982, granting ownership (excepting mineral rights) of the subject property to the state, expressly conditioned upon the state's payment to Sugarland and the Orlandos *973 of the amounts of compensation awarded to each.
Both the state and the Orlandos took devolutive appeals from the expropriation judgment. However, the state on November 9, 1982, filed a motion with this court to dismiss both appeals, alleging that the runway extension project had been officially abandoned, and arguing that as a result, the entire matter had become moot and the case should be remanded to the district court for the fixing of the Orlandos' attorney's fees. That motion was denied and the state allowed its appeal to be dismissed on December 2, 1982 for failure to timely file a brief in support of its appeal. The Orlandos subsequently filed a motion to dismiss their appeal, which was granted on December 23, 1982, and the expropriation judgment thereafter became final.
It seems apparent from the record that the Orlandos were informally aware by mid-1982 that the state intended to abandon the runway extension project. In any case, by letter dated January 6, 1983, the state informed counsel for the Orlandos that the project had been officially abandoned and that the state did not intend to take possession of the subject property. In the opinion of the state, the expropriation judgment thus had no effect, and it declared its intention to oppose any attempt by the Orlandos to obtain an appropriation from the state legislature to satisfy the expropriation judgment. Despite this forewarning, in the spring of 1983 the Orlandos sought to obtain an appropriation from the legislature. After a hearing in which DOTD testified in opposition on the ground that it had abandoned the project, the House Committee on Appropriations voted to report the Orlandos' appropriation bill unfavorably.
Thereafter, on June 1, 1983, the Orlandos filed a suit for declaratory judgment pursuant to LSA-C.C.P. arts. 1871 et seq., seeking the following relief: (1) an order that the state pay the amount awarded by the trial court in the expropriation judgment; (2) a declaration that the project's abandonment did not affect the state's obligation to pay the amount awarded; (3) a resolution in favor of judgment creditors of "the conflict contained in Article 12, Section 10, of the Louisiana Constitution of 1974"; (4) a declaration that LSA-R.S. 13:5109(B) and La.Const. Art. 12, Sec. 10 are violative of the Due Process and Equal Protection clauses of the U.S. Constitution's Fourteenth Amendment; and (5) an increase in the amount of attorney's fees awarded by the trial court in the expropriation judgment. After a hearing, the trial court rendered judgment against the Orlandos and in favor of the state, denying all of the Orlandos' prayers for relief. The Orlandos petitioned for, and were granted, a devolutive appeal; it is on that appeal that the cause is before us.
Before addressing the Orlandos' arguments on appeal, we note that the record further shows that on January 9, 1984, after judgment on the petition for declaratory relief was rendered, the Orlandos filed a motion to set attorney's fees and expenses arising from the original expropriation proceeding. By judgment signed January 25, 1984, the trial court awarded the Orlandos the sum of $40,855.20 in compensation. The record reflects that Sugarland had followed a similar course and had obtained a judgment on July 13, 1983, ordering the state to pay attorney fees in the amount of $30,202.51.
The Orlandos seek declaratory relief pursuant to LSA-C.C.P. arts. 1871-83, which substantially incorporate the provisions of the Uniform Declaratory Judgments Act. The consistent interpretation of the Uniform Act and of our own codal articles is that a person is entitled to relief by declaratory judgment when his rights are uncertain or disputed in an immediate and genuine situation and declaratory judgment will remove that uncertainty or terminate that dispute. When declaratory judgment is thus appropriate, neither the existence of another adequate remedy nor the fact that further relief has been or can be claimed will preclude a court from rendering judgment declaring a petitioner's rights *974 or status. In Re P.V.W., 424 So.2d 1015 (La.1982).
The function of a declaratory judgment is simply to establish the rights of the parties or express the opinion of the court on a question of law without ordering anything to be done. Gulotta v. Cutshaw, 258 So.2d 555 (La.App. 1st Cir.1972), reversed on other grounds 283 So.2d 482 (La.1973). For this reason the trial court was correct in refusing to render a money judgment or order an increase in attorney fees, as requested by the Orlandos.
The first issue we must address is whether the state may, after rendition of final judgment, in a Title 19 expropriation proceeding, officially abandon the project which was the basis of the expropriation suit and on that ground, refuse to take possession of the property involved or to pay the amount awarded. The Orlandos contend that the final judgment transferred ownership of the subject property and mandated state payment of the compensation award. The state contends that under the terms of the expropriation judgment itself and LSA-R.S. 19:10, acquisition of ownership was expressly subject to the suspensive condition of payment of the award of compensation. The state argues that the judgment did not mandate payment, but left it optional with the state to either pay and acquire ownership, or to abandon its plans to take the property altogether.
LSA-R.S. 19:10 provides: "Payment by the plaintiff to the owner of the compensation fixed in the final judgment to be due or the deposit thereof in the registry of the court for the benefit of the persons entitled thereto entitles the plaintiff to the property rights described in the judgment of expropriation." The final judgment of expropriation granted to the state the full ownership of the subject property (reserving unto Sugarland the mineral rights) "... upon payment to the parties entitled thereto or into the registry of the court for their benefit, of the amount of just compensation due ...". Payment of the compensation awarded is not mandated by the judgment.
In construing a judgment, the entire context must be considered, and in the event of doubt or ambiguity it is proper to consider the pleadings, subject matter of suit, reasons for judgment, and other matters of record in order to arrive at an interpretation consistent with a proper decree on the facts and law presented. American Bank & Trust Co. v. Blue Bird Restaurant and Lounge, 294 So.2d 302 (La.App. 1st Cir.1974), writ denied 296 So.2d 840 (La.1974).
Article 1, Section 4 of the Louisiana Constitution of 1974 provides, in pertinent part:
"Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit."
Property is "taken" when the public authority acquires the right of ownership or one of its recognized dismemberments. Columbia Gulf Transmission Company v. Hoyt, 252 La. 921, 215 So.2d 114 (1968). A right of ownership or one of its recognized dismemberments is acquired only after just and adequate compensation has been paid. Greater Baton Rouge Airport District v. Hays, 339 So.2d 431 (La.App. 1st Cir.1976), writ denied 341 So.2d 403 (La.1977). Under LSA-R.S. 19:10 and the clear terms of the final expropriation judgment, the state could not acquire any right of ownership unless and until payment of the award of compensation was made. As it is undisputed that such was never done and the state has formally admitted its intention never to do so, the property has not been "taken" either in the constitutional sense or under the terms of the applicable expropriation statutes.
Accordingly, we conclude that the state may, even after rendition of a final judgment in a Title 19 expropriation proceeding, declare its intention to abandon the public purpose behind the expropriation and decline to pay the amount awarded in compensation by the court. Although there is no statutory authority expressly *975 sanctioning such abandonment after rendition of a final judgment, we find this result consistent with the general rule in other jurisdictions, allowing a condemnor to voluntarily discontinue or abandon expropriation proceedings at any point up to final vesting of title by payment of an award, in the absence of a statute limiting that right. See 30 C.J.S. Eminent Domain, § 335, and cases cited therein. We find this result consistent as well with Section 201 of Title 19, which provides as follows:

A court of Louisiana having jurisdiction of a proceeding instituted by the State of Louisiana, a parish, a municipality or an agency of any of them vested with the power of expropriation, to acquire real property by expropriation, shall award the owner of any right, or title to, or interest in such real property such sum as will, in the opinion of the court, reimburse such owner for his reasonable attorney fees actually incurred because of the expropriation proceeding, if the final judgment is that the plaintiff cannot acquire the real property by expropriation or if the proceeding is abandoned by the plaintiff. Any such award shall be paid from the same funds from which the purchase price of the property would have been paid.
The rights of the landowner herein fixed are in addition to any other rights he may have under the Constitution of Louisiana. (Emphasis supplied.)
The Orlandos have in fact proceeded against the state, under this section, to obtain reimbursement for their attorney fees incurred in the original expropriation proceeding. By judgment signed January 25, 1984, the Orlandos were awarded over forty thousand dollars in reimbursement. By taking this action, it seems to us that the Orlandos have recognized the state's right to abandon the expropriation proceeding after rendition of final judgment, provided the award was never paid and the state had not taken actual possession of the subject property.
Having concluded that the state had a right to refuse payment of the award of compensation fixed by the final expropriation judgment, we find that the trial court correctly denied the Orlandos any declaratory relief on that issue. Even were we to hold that the final judgment is binding on the state regardless of the abandonment of the project behind the expropriation suit, it is clear that a court lacks the power to compel the state to pay a judgment rendered against it.
La.Const. of 1974, Art. 12, Sec. 10(A) provides that the state is not immune from suit or liability in contract or tort. However, Art. 12, Sec. 10(C) protects public property and public funds from seizure to satisfy a judgment against the state, and further provides that no such judgment shall be paid except from funds appropriated therefor by the legislature.
It has become obvious in the ten years since the 1974 constitution became effective that the waiver of sovereign immunity from suit and liability of Art. 12, Sec. 10(A) is, in reality, only a waiver of immunity from suit. The legislature may, on the authority of Art. 12, Sec. 10(C), refuse to pay judgments for which the state has been held liable by a court of law. This court lacks the power to compel the state to pay a judgment rendered against it, as the appropriation of funds by a legislative body is generally a discretionary, rather than a ministerial, duty. De Laureal Engineers, Inc. v. St. Charles Parish Police Jury, 406 So.2d 770 (La.App. 4th Cir.1981); Fontenot v. State Department of Highways, 358 So.2d 981 (La.App. 1st Cir.1978). Thus, the trial court correctly denied the Orlandos' request for a declaration or order concerning the state's obligation to pay the judgment.
The Orlandos contended on the trial level that: (1) there is a conflict in the provisions of Sec. 10(A) and (C) of Article 12 which should be resolved in favor of the judgment creditor, and (2) Sec. 10(C) and LSA-R.S. 13:5109(B) are invalid on the ground that they violate the Due Process and Equal Protection clauses of the Fourteenth Amendment of the U.S. Constitution.
*976 The trial judge correctly noted that these issues have previously been decided adversely to the Orlandos' position. See De Laureal Engineers, Inc. v. St. Charles Parish Police Jury, supra, and Foreman v. Vermilion Parish Police Jury, 336 So.2d 986 (La.App. 3rd Cir.1976), writ denied 339 So.2d 846 (La.1976). We find nothing in the Constitution or recent jurisprudence to compel a contrary conclusion.
On appeal, the Orlandos reverse their original position and argue that Art. 12 and R.S. 13:5109(B) do not apply at all in expropriation cases. These provisions apply only to suits brought against the state, they contend, and not to suits brought by the state, such as expropriation. The Orlandos argue that the right to be paid for an expropriation is "a constitutional right which is `self-executing', and has always been an exception to the limited sovereign immunity concerns of Section 10 and related statutes, and Louisiana Courts have repeatedly recognized that fact." However, the authority petitioners cite involves `reverse expropriation' [inverse condemnation] suits, or suits brought by aggrieved owners seeking compensation for an already accomplished `taking' or `damaging' by the state. Such is clearly not the case here.
In an expropriation proceeding instituted by the state, a judgment granting an award of compensation to be paid by the state is governed by Article 12, Section 10(C), which provides in pertinent part:
"No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which judgment is rendered."
Judgments rendered in expropriation suits can be satisfied by no other procedure.
At the conclusion of the hearing below, the trial judge voiced his concern with the potential for abuse by the state in these circumstances. We share his concern. However, we are not called upon in this case to address those concerns. The Orlandos have an adequate remedy under existing provisions of law if they believe that they have suffered compensable damage by the state's action in this case.
For the foregoing reasons, we affirm the judgment of the trial court, and cast appellants, the Orlandos, for all costs of appeal.
AFFIRMED.