808 So.2d 576 (2001)
ST. TAMMANY PARISH HOSPITAL SERVICE DISTRICT NO. 2 d/b/a Slidell Memorial Hospital and Medical Center
v.
Chris SCHNEIDER.
No. 2000 CA 0247.
Court of Appeal of Louisiana, First Circuit.
May 11, 2001.
*579 Gregory C. Weiss, Terese M. Bennett, Weiss & Eason, L.L.P., New Orleans, for Plaintiff-Appellee St. Tammany Parish Hospital Service District No. 2, d/b/a Slidell Memorial Hospital and Medical Center.
Richard F. Knight, Tammy B. Keaton, Talley, Anthony, Hughes & Knight, L.L.C., Bogalusa, for Defendant-Appellant Chris Schneider.
Before: PARRO, FITZSIMMONS, and GUIDRY, JJ.
PARRO, J.
This appeal stems from an expropriation action initiated by St. Tammany Parish Hospital Service District No. 2, d/b/a Slidell Memorial Hospital and Medical Center (SMH), seeking to acquire property owned by Chris Schneider. When that action was dismissed, Schneider sought damages, attorney fees, expert fees, and other litigation expenses. From a judgment awarding him $22,250 in attorney fees and litigation expenses, Schneider has appealed, seeking an increase in those awards, additional attorney fees for the appeal, plus awards of damages and expert fees. We affirm.

BACKGROUND
In November 1994, SMH brought an expropriation action against Schneider, the owner of a building in which SMH had been the sole tenant for six years. SMH had been leasing the building on a month-to-month basis, but had vacated the property while negotiating with Schneider for its purchase, several months before filing the expropriation action. SMH had offered $55,000 for the property, which Schneider refused, believing the property was worth considerably more.[1] A January 1995 appraisal done for him showed a value of $146,000, and a November 1995 appraisal for a bank indicated an "as is" value of $137,000. The expropriation petition indicated SMH intended to use the office building for its Maternal Child Health Care Center, its Pulmonary Rehabilitation Department, offices for six new staff physicians, and record storage. The *580 petition also noted that the office building was surrounded by property owned by SMH. After SMH filed a supplemental and amending petition indicating it intended to raze the building and use the property for additional parking, Schneider answered, seeking just compensation, damages, litigation expenses, and costs.
On January 26, 1996, SMH filed a motion to dismiss the expropriation; the motion was set for a show cause hearing. Schneider filed a motion to tax costs to be heard the same day, asserting his right to lost rentals, attorney fees, expert fees, and litigation expenses. He also filed a memorandum opposing the dismissal, "[i]nsofar as [SMH] is seeking to avoid paying the costs incurred by defendant in connection with this expropriation action...." The hearing was continued, during which time Schneider claims he incurred additional attorney fees and lost rental damages. Eventually, on May 22, 1996, the court held a hearing, at which the parties stipulated that Schneider's claims for damages would be heard at a later date and the only issue would be whether or not he could recover attorney fees pursuant to Louisiana Revised Statute 19:201. That statute describes circumstances under which a property owner is entitled to recover his attorney fees in the event of an abandoned or dismissed expropriation suit. Following the hearing, in a judgment rendered July 2, 1996, the trial court awarded Schneider attorney fees of $6,572.50, and SMH appealed. See St. Tammany Parish Hosp. Service Dist. No. 2 v. Schneider, 96-2798 (La.App. 1st Cir.2/20/98), 707 So.2d 156. This court held that the award of attorney fees was premature because the expropriation had not yet been dismissed. The case was remanded for further evidence as to the ultimate disposition of the matter, reserving Schneider's right to seek attorney fees upon dismissal of the action. Id. at 158.
While the attorney fee issue was pending before this court, SMH filed a motion for summary judgment in the trial court concerning Schneider's claims for damages and expert fees, asserting that, because there had been no "taking" of the property, Schneider was not entitled to these. On July 1, 1997, the trial court denied the motion for summary judgment. After this court remanded the case, Schneider asked the trial court to consider the motion for dismissal and dismiss the expropriation, reserving his rights to claim lost rentals, attorney fees, and litigation costs. The expropriation was eventually dismissed in a judgment rendered October 20, 1998,[2] and Schneider's remaining claims were set for trial on November 3, 1998. After two days of testimony, one of which was continued until January 1999, the court requested post-trial memoranda and took the matter under advisement. While the case was under advisement, on March 8, 1999, SMH filed a motion for sanctions against Schneider and his attorneys, seeking over $40,000 for the filing of frivolous pleadings opposing the dismissal of the expropriation. Schneider opposed the motion.
A judgment was signed July 19, 1999. In reasons for judgment, the court found Schneider had not proven he was entitled to any damages for lost rentals, because SMH was not in bad faith, the delays were due to both parties' negotiating positions, and Schneider had failed to mitigate his damages by finding another tenant. The court did not address the expert fees in its reasons for judgment, and awarded *581 Schneider only $22,500 for attorney fees and litigation expenses, which was considerably less than he had claimed. The court denied SMH's motion for sanctions.
Schneider has appealed, claiming the court erred in denying his claim for lost rentals, expert fees, and a portion of the attorney fees and litigation costs he incurred as a result of the expropriation action. He also asks for additional attorney fees for the appeal. He argues that the trial court's judgment was based on an incorrect application of expropriation law, which should have been strictly construed against SMH, and therefore, this court should conduct a "de novo" review. He also asserts that the judgment violates the constitutional requirement that when property is taken or damaged due to expropriation, its owner should be compensated "to the full extent of his loss." Schneider also alleges the trial court's refusal to admit certain evidence was improper and prejudiced his ability to prove that SMH had acted in bad faith and abused its expropriation power. He further claims that he was forced to have the property appraised and inspected in order to defend the case and had to hire a CPA to prove his lost rentals. He argues that he would not have incurred these expenses, had it not been for the expropriation, and therefore, it was error for the court to ignore his claim for payment of the expert fees.
Schneider asks this court to award attorney fees for this appeal, and to increase the judgment to cover all of the following:

Attorney fees and expenses $35,106.30
Lost Rentals  560 days @ $67.79/day 44,160.53
 (future value with 4% interest rate)
Expert Fees
 Andre Frilot  appraisal 2,500.00
 expert witness fee 1,350.00
 John Henry  building inspection 325.00
 expert witness fee 2,500.00
 Kathy Rickert, CPA  accounting services 818.75
 expert witness fee 1,575.00
 __________
 $88,335.58

Schneider also contends the delays and many of the costs he incurred, both before and after SMH filed its motion to dismiss the expropriation, were the result of actions taken in bad faith by SMH, including the first appeal to this court, requests for continuances, its motion for summary judgment, motions in limine, and its motion for sanctions.
SMH asks this court to apply the abuse of discretion standard in reviewing the attorney fee award for reasonableness and to affirm the judgment of the trial court. It contends the constitutional provision is inapplicable, because there was no taking or damaging of Schneider's property in this case. It argues that it had already vacated the property when the expropriation *582 was filed; therefore, the lost rentals cannot be attributed to this action. SMH also claims that Schneider's loss of rental income was incurred because he failed to mitigate his damages by getting another tenant and protracted the litigation by opposing the motion to dismiss and other delaying tactics. SMH also argues that most of the expert fees were incurred as part of the negotiating process, and some were incurred after it had moved to dismiss, and therefore were properly excluded from the court's award.

ANALYSIS

Lost Rentals
Schneider asserts that his property was damaged by the actions of SMH in filing and then dismissing its expropriation suit, and that he is therefore entitled to compensation to the full extent of his loss, including lost rentals and all amounts expended in litigating this matter.[3] He bases his claims on Article I, Section 4 of the Louisiana Constitution, which states, in pertinent part:
Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into the court for his benefit.... In every expropriation, ... the owner shall be compensated to the full extent of his loss.
This provision has also been interpreted to require compensation for any taking or damaging of property by the state or a political subdivision, even though no expropriation proceedings have been initiated in accordance with the statutory scheme set up for that purpose. Although the legislature has not provided a procedure whereby an owner can seek damages for an uncompensated taking or damaging, the Louisiana Supreme Court has recognized that the action for "inverse condemnation" arises out of the self-executing nature of the constitutional command to pay just compensation. This action provides a procedural remedy to a property owner seeking compensation for land already taken or damaged against a governmental or private entity having the powers of eminent domain where no expropriation action was commenced. See State, Through the Dep't of Transp. and Dev. v. Chambers Inv. Co., Inc., 595 So.2d 598, 602 (La.1992). The same legal standards are applied whether inverse condemnation or formal expropriation of property has taken place. Avenal v. State, 99-0127 (La.App. 4th Cir.3/3/99), 757 So.2d 1 (opinion on rehearing 3/15/00), 757 So.2d 1, 12, writ denied, 00-1077 (La.6/23/00), 767 So.2d 41, cert. denied sub nom. Louisiana Dep't of Natural Resources, v. Avenal, 531 U.S. 1012, 121 S.Ct. 568, 148 L.Ed.2d 486 (11/27/00).
Both the constitution and statutory rules regulate and limit the manner in which expropriation may be effected.[4] Since expropriation proceedings are in derogation of the right of individuals to own property, the law governing these proceedings must be strictly construed against the expropriating authority. State, through the Dep't of Transp. and Dev. v. Estate of Davis, 572 So.2d 39, 42 (La.1990). In addition to the expropriation statutes, *583 the legislature has addressed the inverse condemnation situation by statutorily providing for the award of attorney fees in such cases and for attorney and expert fees in the event such a claim is settled. See LSA-R.S. 13:5111; Rivet v. State, Dep't of Transp. and Dev., 96-0145 (La.9/5/96), 680 So.2d 1154, 1160. Louisiana Revised Statute 13:5111 states, in pertinent part:
A. A court of Louisiana rendering a judgment for the plaintiff, in a proceeding brought against the state of Louisiana, a parish, or municipality or other political subdivision or an agency of any of them, for compensation for the taking of property by the defendant, other than through an expropriation proceeding, shall determine and award to the plaintiff, as a part of the costs of court, such sum as will, in the opinion of the court, compensate for reasonable attorney fees actually incurred because of such proceeding. Any settlement of such claim, not reduced to judgment, shall include such reasonable attorney, engineering, and appraisal fees as are actually incurred because of such proceeding.
* * *
B. The rights of the landowner herein fixed are in addition to any other rights he may have under the constitution of Louisiana and existing statutes
. . . .
Although the measures and mechanisms for providing compensation to the full extent of the loss are still being developed by the jurisprudence, the entire body of law related to this subject presumes that property was taken or damaged by: (1) an expropriation action that proceeded to final judgment in favor of the expropriating entity; or (2) an uncompensated taking after which a property owner brought an inverse condemnation action resulting in a judgment in favor of the property owner. However, this case does not fall within either of those categories. Here, SMH eventually dismissed its expropriation suit against Schneider, thus abandoning its efforts to "take" the property by the exercise of eminent domain. Ultimately, the first issue before this court, therefore, is whether, without specific statutory authority for such an award, these principles of expropriation or inverse condemnation are to be applied to compensate the property owner for any damage or loss he sustained as the result of an abandoned or dismissed ordinary expropriation action, even though no property was taken from him.
Although Schneider's arguments are cogent and seductive, he has not directed our attention to, nor has our research disclosed, any cases in which damages have been awarded to a property owner after the dismissal of an expropriation case initiated by a petition in an ordinary proceeding. This case appears to be one of first impression. Based on our research, the only cases in which an award of any kind has been made to a property owner following the dismissal of an expropriation suit involve the award of attorney fees, pursuant to statutory authority.[5]See, e.g., Town of Jonesville v. Griffing, 95-1365 (La.App. 3rd Cir.3/6/96), 670 So.2d 737, writ denied, 96-0825 (La.5/10/96), 672 So.2d 928; State, through Dep't of Transp. & Dev. v. Sugarland Ventures, Inc., 476 So.2d 970 (La.App. 1st Cir.), writ denied, 478 So.2d 909 (La.1985); State, Dep't of Transp. & Dev. v. Illinois Cent. Gulf R.R. Co., 464 So.2d 401 (La.App. 1st Cir.1985); Wilson v. State, Dep't of Transp. & Dev., 464 So.2d 343 (La.App. 5th Cir.), writ denied, 468 So.2d 1207 (La.1985); Prentice Oil & Gas Co. v. State, Dep't of Transp. & *584 Dev., 421 So.2d 937 (La.App. 1st Cir.), writ denied, 423 So.2d 1165 (La.1982)[6]; Jefferson Parish v. Harimaw, Inc., 297 So.2d 694 (La.App. 4th Cir.1974).
The legislature has recognized that the filing and eventual dismissal of an expropriation suit can cause a monetary loss to the property owner in the form of attorney fees. Accordingly, the legislature has mandated the award of attorney fees in certain unsuccessful or abandoned expropriation suits, pursuant to Louisiana Revised Statute 19:201, which states:
A court of Louisiana having jurisdiction of a proceeding instituted by the State of Louisiana, a parish, a municipality or an agency of any of them vested with the power of expropriation, to acquire real property by expropriation, shall award the owner of any right, or title to, or interest in such real property such sum as will, in the opinion of the court, reimburse such owner for his reasonable attorney fees actually incurred because of the expropriation proceeding, if the final judgment is that the plaintiff cannot acquire the real property by expropriation or if the proceeding is abandoned by the plaintiff. Any such award shall be paid from the same funds from which the purchase price of the property would have been paid.
The rights of the landowner herein fixed are in addition to any other rights he may have under the Constitution of Louisiana.
However, this statute is limited to an award of attorney fees. Had the legislature wished to authorize payment for other losses, it could have done so.[7]
We note also that this court has recognized the general rule in other jurisdictions, allowing an expropriating entity to voluntarily discontinue or abandon expropriation proceedings at any point up to final vesting of title by payment of an award, in the absence of a statute limiting that right. Sugarland, 476 So.2d at 975; see also 29A C.J.S. Eminent Domain §§ 358-363. In the Sugarland case, the claimants asserted their right to compensation from the state after an expropriation suit fixed the price of certain property, but the state declined to authorize payment and officially abandoned the expropriation. The court noted:
The [claimants] argue that the right to be paid for an expropriation is "a constitutional right which is `self-executing', and has always been an exception to the *585 limited sovereign immunity concerns of Section 10 and related statutes, and Louisiana Courts have repeatedly recognized that fact." However, the authority petitioners cite involves `reverse expropriation' [inverse condemnation] suits, or suits brought by aggrieved owners seeking compensation for an already accomplished `taking' or `damaging' by the state. Such is clearly not the case here.
Sugarland, 476 So.2d at 976.
Such is also clearly not the case in the matter we are reviewing. Like the Sugarland case, this case involves only the dismissal of an expropriation suit, rather than an already accomplished taking or damaging. This distinction is also recognized by the jurisprudence from other jurisdictions. Generally, in the absence of statutes authorizing such recovery, when expropriation proceedings are abandoned or discontinued in good faith, and at a time and under circumstances warranting it, the property owner cannot recover damages. To warrant such recovery in the absence of a statute authorizing it, the acts causing the loss must have been wrongful as well as injurious. The expropriating power must have acted in good faith both in instituting and in abandoning the proceedings. See 29A C.J.S. Eminent Domain § 363 and cases cited therein.
We feel this general rule is consistent with the constitutional right of access to the courts. LSA-Const. Art. I, § 22. To rule otherwise would have a "chilling effect" on that right. Not only expropriation suits, but many types of lawsuits cause "damage" to the defendant's personal and property interests, if only by virtue of the litigation expenses and attorney fees incurred. However, this is a necessary, if sometimes unfortunate, concomitant of every person's right to seek judicial resolution of competing claims. In that sense, we feel the claims made in this case are analogous to causes of action alleging malicious prosecution or abuse of process; some finding of bad faith is required before damages can be awarded. See Robinson v. Goudchaux's, 307 So.2d 287, 291 (La.1975). Therefore, we subscribe to the general rule that, absent a finding of bad faith or abuse, no damages are warranted when an expropriation suit by ordinary proceeding has been commenced, and later dismissed or abandoned under timely and appropriate circumstances. Applying this conclusion to the case at hand, we conclude that, unless SMH acted in bad faith or abused its expropriation power, no damages in the form of lost rentals were appropriate.

Bad Faith/Abuse of Expropriation Power
The standard in determining abuse of expropriation power is whether the expropriator acted in bad faith or so arbitrarily and capriciously that its action was without an adequate determining principle or was unreasoned. The expropriating entity is accorded great discretion, but may abuse it by acting without considering and weighing relevant factors, such as the availability of an alternate location, costs, environmental factors, long-range area planning, and safety. State, Dep't of Transp. & Dev. v. Estate of Griffin, 95-1464 (La.App. 1st Cir.2/23/96), 669 So.2d 566, 568. The property owner bears the burden of proving that the expropriating entity exercised its discretion arbitrarily, capriciously, or in bad faith. Red River Waterway Comm'n v. Fredericks, 566 So.2d 79, 83 (La.1990). Whether or not the property owner has met his burden of proof requires the trial court to make a factual determination, which we will not disturb absent manifest or clear error. *586 Town of Broussard v. Ducrest, 98-838 (La. App. 3rd Cir.12/9/98), 722 So.2d 1174, 1176.
Although the trial court did not specifically enumerate the factors used in reaching its conclusion, it found there was insufficient evidence to establish SMH acted in bad faith or abused its expropriation authority. The court stated in written reasons:
The parties entered into arms length negotiations and simply differed over the price. Moreover, SMH's position during the negotiations regarding the value of the property and the possible need to build a bulk head is supportable and reasonable.
The court further noted that, although the property was effectively taken out of commerce until SMH filed its motion to dismiss the expropriation, the delay was not unreasonable and was due to the positions taken by both parties.
In Schneider's first assignment of error, he claims the trial court erred in not strictly construing the applicable expropriation law against SMH. However, in arguing this point, Schneider does not direct this court's attention to any specific statutory provision that should have been more "strictly construed" by the trial court; nor have we found any provision that was not followed by SMH in these proceedings.[8] Rather, Schneider contends the totality of SMH's actions in this case, particularly its "low-ball" purchase offer for his property, demonstrated its bad faith, and that the court erred in failing to recognize this.
We disagree. SMH was not unreasonable in basing its purchase offer on the appraised value of Schneider's property, taking into consideration the probable need to construct a bulkhead to prevent further erosion damage. Even though the record shows there was conflict between the city and parish concerning which entity might bear ultimate responsibility for such construction, the fact remains that all of the appraisers and inspectors who examined the property recognized that something needed to be done to protect it or the building would eventually crumble. Even a building inspector who examined the property for Schneider stated in his report:
A canal runs along the rear of the property. It is reported that the canal has progressively gotten deeper and wider over the past few years and the bank is subsiding ever nearer to the subject property. The canal may well have contributed to the currently observed settlements and brickwork cracking. Remedial measures are warranted, such as installation of a bulkhead, to prevent further erosion of the bank and likely future settlements.
Regardless of whether the parish, the city, or the property owner eventually took the steps necessary to cure the erosion problem, the fact remains that this physical circumstance diminished the value of the property to a potential purchaser. Consequently, SMH was not in "bad faith" for basing its offer on an appraisal that factored in the cost of correcting this obvious problem, as well as other repair needs.
The question of bad faith is also addressed in Schneider's third assignment of error, in which he contends the trial court erred in not finding that SMH acted in bad faith and abused its expropriation power. In this argument, he recites a number of facts that he interprets as evidence of bad faith, including SMH's knowledge that the property owner was not responsible for the bulkhead construction, its decision to terminate its lease and vacate the property to pressure him to sell *587 under threat of expropriation, and its eventual dismissal of the action on the basis that it no longer needed the property. While these facts could be interpreted as evidence of bad faith, they could also be interpreted as reasonable business decisions under the circumstances. Were this court sitting as the finder of fact, we might agree with Schneider's interpretation. However, the evaluation of such evidence and factual findings based on that evidence are the province of the trial court. In an expropriation proceeding, like any other litigation, the trial court's factual determinations will not be disturbed on review absent manifest error. Estate of Davis, 572 So.2d at 45. We are not persuaded that the factual circumstances in this case so clearly mandate a finding of bad faith that the contrary conclusion of the trial court was manifestly erroneous.
We have stated that when an expropriation suit by ordinary proceeding has been dismissed or abandoned by the expropriating entity, absent a finding of bad faith or abuse of the expropriation power, no damages are payable to the property owner. We conclude that, having found no bad faith or abuse, the trial court did not err in refusing to award lost rental damages in this case.[9]

Attorney Fees
In his fourth assignment of error, Schneider asserts that the trial court erred in not awarding all of the attorney fees and litigation expenses incurred by him as a result of the expropriation action. He urges that because the language of Louisiana Revised Statute 19:201 requires an award of "attorney fees actually incurred because of the expropriation," the trial court erred in exercising discretion and disallowing a portion of those fees. However, this argument ignores another key word in the statute, that being the word "reasonable," which immediately precedes the words "attorney fees" in the sentence. Regardless of the language of the statutory authorization for an award of attorney fees or the method employed by the trial court in making such an award, courts may inquire as to the reasonableness of attorney fees by considering: the ultimate result obtained; the responsibility incurred; the importance of the litigation; the amount of money involved; the extent and character of work performed; the legal knowledge, attainment, and skill of the attorneys; the number of appearances and intricacies of facts involved; the diligence and skill of counsel; and the court's own knowledge. Rivet, 680 So.2d at 1161. Clearly, as noted by the Louisiana Supreme Court in the Rivet case, the statutory language cannot relieve the court of its authority to exercise a discretionary review of attorney fees. Additionally, in making such an award, the trial court is vested with considerable discretion, and the award will not be disturbed in the absence of "clear abuse." Prentice, 421 So.2d at 940.
This court does not doubt that Schneider actually incurred all of the attorney fees and litigation expenses claimed by him, particularly in light of the many motions he was forced to defend, as well as the first appeal to this court. We are singularly unimpressed with SMH's shrill contention that Schneider bears sole responsibility for delaying this litigation, when the record clearly demonstrates that his opposition to the dismissal was limited to a memorandum raising the legitimate res nova issue of the extent of damages, fees, and costs he was legally entitled to *588 receive in a dismissed expropriation suit. The record further shows that many delays were due to the motions filed by SMH. However, like Schneider, SMH had the right to fully litigate this case. The fact that the fees and expenses claimed by Schneider were actually incurred is not the only factor to be considered in making an award of attorney fees. Considering the ultimate result and the amount at stake, we cannot say the trial court abused its discretion in deciding that Schneider's claim for over $35,000 in attorney fees and expenses for a dismissed expropriation involving property worth less than $150,000 was excessive.
Schneider also makes an argument based on the constitutional requirement that a property owner must be compensated "to the full extent of his loss." LSA-Const. Art. I, § 4. He contends this provision mandates reimbursement of all his expenses attributable to the expropriation proceeding, including the full amount of attorney fees and costs incurred. However, as previously noted, a dismissed expropriation suit is qualitatively different from a completed expropriation or inverse condemnation in which an actual "taking" of property has occurred. Therefore, absent a finding of bad faith or abuse of the expropriation power, the court can only award damages and fees pursuant to statutory authority. As discussed above, although there is statutory authority for an attorney fee award, the statute involved does not mandate an award of all attorney fees and costs incurred, and the trial court's award in this case is reasonable.
We note also the argument made by SMH in the first appeal to this court and again on this appeal, that Revised Statute 19:201 does not apply to it, because it is neither the state, a parish, a municipality, or an agency of any of them, but is a specially created hospital district.[10] As stated by this court the first time this issue was before it, this might be "a distinction without a difference," when read with the general provisions governing expropriations. Then again, it might not. However, because SMH did not answer the appeal and seek a reversal of the attorney fees and expenses awarded by the trial court, that issue is not before us, and our review is limited to examining the trial court's award for an abuse of discretion. Finding none, we affirm that award of $22,250, and decline Schneider's request for additional attorney fees for this appeal.

Expert Fees
The only costs which can be taxed against a litigant are those specifically provided for by statute. Therefore a decree ordering a litigant to pay all costs means that he is to pay costs provided for by statute, sometimes termed "legal costs." This rule has been recognized by this court in expropriation cases also. State, Through the Dep't of Highways v. Salemi, 249 La. 1078, 1083, 193 So.2d 252, 253 (1966). The trial or appellate court may award court costs against the state or any political subdivision, but only in favor of a successful party. LSA-R.S. 13:5112.
In Schneider's fifth assignment of error, he contends the trial court erred in failing to award expert fees to him. He again argues that such an award is necessary in order to satisfy the constitutional mandate that he be fully compensated for the losses he incurred as a result of the expropriation. As noted above, the findings that Schneider's property was not taken and that SMH did not act in bad *589 faith or abuse its expropriation power foreclose that argument. Furthermore, although Louisiana Revised Statute 13:5112 allows the court to impose expert fees on a political subdivision, such an award is only appropriate when a substantive judgment has been rendered in favor of the party requesting such an award. Here, there was no judgment in favor of Schneider; there was only a dismissal of the expropriation action on the motion of the party who filed it and an award of attorney fees, pursuant to a specific statute.
We further note that, unlike the situation involving attorney fees, there is no comparable statute mandating, or even allowing, an award of expert fees when an expropriation has been abandoned or dismissed. Clearly, had the legislature intended to make expert fees available to a property owner against whom an expropriation action has been commenced and later dismissed, it could have done so. Accordingly, we conclude that the trial court was legally correct in not awarding the expert fees to Schneider in this case.

Exclusion of Evidence
Finally, in his last two assignments of error, Schneider claims the trial court erred in excluding certain evidence. Schneider tried to testify regarding conversations he had with representatives of SMH concerning its continued interest in purchasing his property, even after its motion to dismiss the expropriation action had been filed. He argues that these conversations confirm that SMH's reason for offering such a low sum for his property was because it intended to raze the building and use the property as a parking lot. This testimony would not have been of any probative value to the court; this purpose was clearly stated in SMH's supplemental and amending petition. He also claims this testimony would have justified his concerns that SMH might again seek to expropriate his property, since its continued interest in acquiring the property was evidenced by these conversations. We fail to see how this concern would alter the outcome of this action in any way; such testimony was not relevant and was properly excluded.
Schneider also wanted to introduce the entire suit record from another expropriation proceeding, in which SMH expropriated property belonging to Barry Katz in the same general area and about the same time as it commenced the expropriation action for Schneider's property. According to testimony from several witnesses who referred to the Katz proceeding, the amount offered by SMH in that case was contested by the property owner, who ultimately was awarded considerably more for his property after a jury trial of the expropriation action. After that judgment in the Katz proceeding, SMH moved to dismiss its expropriation of Schneider's property. Schneider contends the Katz record is necessary to give a full picture of SMH's tactics and further demonstrate its bad faith. However, the court allowed some limited testimony concerning the Katz litigation; this was sufficient to apprise the court of the major points Schneider wished to make concerning it. The proffered evidence would have been merely cumulative, in addition to being burdensome. We fail to see how the myriad details of another proceeding could have enlightened the trial court concerning SMH's actions beyond what it had already heard in the matter before it. Therefore, we conclude the trial court did not err in refusing to admit the record from the Katz expropriation.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court awarding Schneider $22,250 for attorney fees and *590 litigation expenses. We assess all costs against Schneider and do not award additional attorney fees for the appeal.
AFFIRMED.
FITZSIMMONS, J., Concurs.
NOTES
[1] A diversion canal in a parish servitude along the back of the property was eroding, and this value reflected the appraiser's estimate that about $54,000 was needed to construct a bulkhead to shore up the property. This appraisal also adjusted the value to reflect other repair costs which, including the bulkhead, totaled $75,000.
[2] This judgment is not in the record, but in its reasons for the judgment currently being appealed, the court stated that it had rendered a judgment dismissing the expropriation on October 20, 1998.
[3] Schneider's second assignment of error is that the trial court erred in not compensating him "to the full extent of his loss," as required by Article I, Section 4 of the Louisiana Constitution, since his property was "damaged" by his inability to rent it while the expropriation was pending. Closely related to this issue is his sixth assignment of error, in which he contends the trial court erred in finding that he failed to mitigate his damages.
[4] See, e.g., LSA-R.S. 19:1-15, 19:101-136.8, and 19:201; 48:441-460; 33:1329.
[5] See LSA-R.S. 19:201.
[6] Schneider cited this case in support of his claim for lost rental damages. However, Prentice involved an expropriation by way of the "quick-taking" procedure, whereby property is actually taken and title vests in the expropriating entity, simply by virtue of the filing of the action and depositing of the estimated fair market value in the registry of the court. See LSA-R.S. 48:444-45. When the Prentice "quick-taking" suit was dismissed by the court, the parties stipulated to an amount payable to the property owner for rental loss while the property was out of commerce. Although many of the legal principles in an expropriation suit by ordinary proceeding are equally applicable to a "quick-taking" procedure, the converse is not necessarily true. The "quick-taking" procedure is a unique form of expropriation with specific statutory provisions addressing the measure of compensation. See LSA-R.S. 48:453. For that reason, the measure of compensation in a dismissed "quick-taking" suit may differ from what is appropriate in a dismissed ordinary expropriation suit. Therefore, our conclusions in this opinion are limited to the situation we are addressing, and do not necessarily apply to dismissals of a "quick-taking" expropriation suit.
[7] We do not believe the second paragraph of this statute compels a conclusion that other damages are available under the "takings clause" of the constitution; it merely recognizes that if there are any other constitutional claims, these may still be asserted in the appropriate instance.
[8] See LSA-R.S. 19:1-15.
[9] Because we have concluded the trial court did not err in denying Schneider lost rental damages, we do not address his sixth assignment of error, in which he contends the trial court erred in finding that he failed to mitigate his damages.
[10] SMH admits that, pursuant to Louisiana Revised Statute 46:1051, it is a political subdivision.