975 So.2d 742 (2008)
PARISH OF ST. CHARLES
v.
R.H. CREAGER, INC. and David B. McDonald Corporation.
No. 07-CA-676.
Court of Appeal of Louisiana, Fifth Circuit.
February 6, 2008.
Rehearing Denied March 10, 2008.
*743 Gregory A. Miller, Attorney at Law, Norco, Louisiana, for Defendants/Appellants.
Don Paul Landry, Attorney at Law, Luling, Louisiana, for Plaintiff/Appellee.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY, and WALTER J. ROTHSCHILD.
MARION F. EDWARDS, Judge.
At issue in this appeal is the amount of damages awarded by the trial court in an expropriation matter. In July of 1990, the plaintiff/appellee, the Parish of St. Charles ("St. Charles Parish"), filed a petition for expropriation of land that constituted a portion of Parcel A-2, owned by defendants/appellants, R.H. Creager, Inc. ("Creager")[1] and Dianne and David McDonald ("McDonalds"). St. Charles Parish required the property for drainage improvement *744 purposes. In September of 1990, the parties entered into a stipulation that confirmed ownership of the property and the immediate need for the expropriation. In conjunction with that stipulation, the parties entered into a consent judgment that was signed on September 28, 1990. The judgment granted full ownership of the property to St. Charles Parish subject to a reservation of mineral rights in accordance with LSA-R.S. 31:149. The consent judgment also reserved the defendants' rights to compensation, attorney's fees, costs, and legal interest resulting from the expropriation.
On September 5, 1991, Creager and the McDonalds filed an answer and reconventional demand in which they asserted that the expropriation of their land devalued the remainder of their property by making it less desirable for commercial or industrial purposes. Creager and the McDonalds asserted that Parcel A-2 is located behind Dianne Place Subdivision and is bounded on the south by the Illinois Central Railroad, on the north by Louisiana and Arkansas Railroad, (now Kansas City Southern Railroad), on the east by land owned by a third party, and on the west by property owned by St. Charles Parish. The only legal access to the property before the expropriation was at its southerly boundary through a private crossing and servitude of access across the Illinois Central Gulf Railroad from the end of Janet Drive. Since the portion of the land expropriated by the parish included this crossing, the pleading sought damages for the expropriated land as well as severance damages for diminishment of value of surrounding land.
The parties conducted a lengthy discovery and, on February 22, 2005, Creager and the McDonalds filed a motion for summary judgment seeking $477,360 in severance damages based on the petition filed. The matter was heard on May 26, 2005. On September 13, 2005, the court rendered a judgment that declared that the judgment of September 28, 1990 constituted a taking by expropriation and that the judgment did not provide Creager and the McDonalds with a servitude or right of passage over the property. The judgment also declared that Creager and the McDonalds do not have legal access to the remainder of Parcel A-2 as a result of the taking by expropriation. The issue of damages was referred to the merits of the trial.
On November 30, 2006, the parties entered into a joint stipulation of fact. The stipulation by the parties included the following:
1.) 16,410.18 square feet of Parcel A-2 was expropriated.
2.) The remaining portion of Parcel A-2 contains 37.9223 acres.
3.) Experts for both sides agree that the fair market value of Parcel A-2 immediately prior to the taking was $12,000.00 per acre.
4.) The amount of compensation due to defendants for the 16,410.18 square feet expropriated is $4,520.00.
5.) As a result of the taking, the defendants do not currently have legal access from the remainder of Parcel A-2 to a public road.
6.) Defendants have a right to seek legal access to the remainder of Parcel A-2.
The parties also made a joint offer of exhibits which included the comprehensive appraisals of experts for both sides and maps of the area.
After a trial on the merits, the trial court rendered judgment in favor of Creager and the McDonalds for $56,883.45. All parties have appealed that judgment.
*745 FACTS
At trial, J. Bradley Oubre ("Mr. Oubre") testified as an expert real estate appraiser. He testified that, in 1990, the value assigned to the property was $12,000 per acre. Mr. Oubre explained that many appraisals were done at that time by the Department of Transportation and Development for construction of Interstate 310, and the range for property in that area was $9,000 to $12,000. Thus, the $12,000 figure was in line with other numerous expropriations. Additionally, Mr. Oubre had recently brokered a deal for land at $12,000 per acre just north of the track at issue herein.
Mr. Oubre explained that the Creager/McDonald track had a private crossing over a railroad track for access. That crossing was part of the parcel taken in the expropriation, leaving the remainder of the parcel landlocked. He estimated the severance damage about $1,500 to $2,000 per acre or about $58,000 total.
In calculating the severance damages, Mr. Oubre recanted his original estimation that the land was valued at $12,000 per acre before the sale. He stated that "after reviewing the thing and realizing the $12,000 an acre was not anywhere close to reality, as far as value, then I ended up with a value in  at the very most of $2,000.00." Mr. Oubre continued his testimony regarding the valuation of the property over a defense objection based on the stipulation of the property value. Mr. Oubre estimated the value of the remaining landlocked property at $500 per acre.
Mr. Oubre also testified that the property could be used for a subdivision at a cost of $35,694 after considering the fill and improvements necessary. But, he also stated that high cost would render the plan for a subdivision economically unfeasible. Mr. Oubre also testified that permits would be necessary to subdivide the land into individual lots. Such a procedure would be lengthy and permits could be denied if the area was zoned as wetlands.
Mr. McDonald testified that, in the 1970's, his company, Dianne Properties, and other parties purchased Parcel A-2 and the adjoining Parcel A-1. The only access to both parcels was by a dedicated servitude at the end of Janet Drive across the private railroad crossing. Originally he planned to build a subdivision with the property. In the 1980's, some of the parties involved in the development of the project had financial problems and the two parcels were divided and he kept Parcel A-2.
Because of the downturn of the economy in the 1980's, only a portion of the subdivision was actually developed. Mr. McDonald considered other uses for the land such as aquaculture.
Mr. McDonald stated that, in 1989, the St. Charles Parish requested a portion of Parcel A-2 for the purpose of installing a drainage pump. Because selling the parish the land it wanted would leave the remainder of the property landlocked, Mr. McDonald was not inclined to sell the property. His request for accommodation to grant ingress and egress was declined by the parish and an expropriation action was filed. Mr. McDonald acknowledged signing the consent judgment reserving his right to collect severance damages.
Dr. Rodolfo Aguilar ("Dr. Aguilar"), an expert in real estate appraisals, testified that he was hired by Creager and the McDonalds to appraise the property taken by the parish. The appraisal was done in 2005 but valued as of the taking in September of 1990. He explained he was making a determination of the fair market value of the property taken and the changing market value on the portion of the property remaining. In making the determination, *746 Dr. Aguilar relied on Mr. Oubre's appraisal done in 1990 for the State. In that appraisal, Mr. Oubre provided a list of comparables that support the value of $12,000 per acre. One of the comparables used in Mr. Oubre's appraisal was the sale of Parcel A-1 on March 27, 1990 to the parish for $12,000 per acre and a sale in 1986 of a small portion of Parcel A-2 for $12,800 per acre. Dr. Aguilar also noted that the parish paid $12,000 per acre for the portion of Parcel A-2 it took in 1990. Ultimately, Dr. Aguilar concluded the value of Parcel A-2 at the time of the taking was $12,000 per acre.
Dr. Aguilar testified that, before the taking, the highest and best use of Parcel A-2 was either agriculture or residential if Janet Drive could be extended over the railroad track. He noted that the remaining portion of Parcel A-2 is narrow, only about 250 feet wide. It is a long tract located just north of Dianne Place Subdivision and appears similar.
Dr. Aguilar stated that the remaining property has no ingress or egress since the taking. Further, the parish has built a pumping station capable of moving 20,000 gallons of water a minute. Since no drainage canal has been dug to avert the water, it is being discharged onto Parcel A-1 and A-2. This situation could cause flooding to the remaining property. Dr. Aguilar concluded that the highest and best use after the taking is wetlands. Dr. Aguilar could not find sales of landlocked low lands for value comparison; however, based on awards for damages caused to wetland areas, he estimated the value of the remaining land at $500 per acre.
Dr. Aguilar conducted a cost to cure analysis in which he concluded there was no viable alternative to cure the damages to the remainder of parcel A-2 because, in addition to having been landlocked by the St. Charles Parish taking, the remainder is situated downstream of a pump station capable of pumping 20,000 gallons of water per minute. Dr. Aguilar further testified that, before the taking, about two-thirds of the property was wet and one third, near the railroad track, was suitable for development.
Timothy Vial ("Mr. Vial"), the Chief Administrative Officer of St. Charles Parish, testified that he was familiar with the expropriations and the property in question. He testified about the permitting process necessary for getting a public railroad crossing necessary for developing a subdivision. He characterized the process as a "nightmare." Applications made to the railroad are usually declined. In the few cases that the applications are granted, the process takes several years. Mr. Vial acknowledged that, since the taking, the remainder of parcel A-2 has no public access, and no agreement between the property owners and St. Charles Parish for access. However, Mr. Vial testified that, if the property owners requested access over the private railroad crossing, St. Charles Parish would allow it. It was also noted that the private nature of the crossing may put St. Charles Parish at risk for liability for any accident which may occur on the crossing.
LAW AND ANALYSIS
The only issue presented for our review is the amount of severance damages awarded by the court for the remainder of the property, which is now an enclosed estate by virtue of the expropriation.
At the trial, St. Charles Parish argued that Creager and the McDonalds have a right under Louisiana law to seek passage over other property because theirs is now an enclosed estate. Accordingly, the method of calculating damages is the cost to cure the situation. St. Charles Parish argued that Creager and the McDonalds simply have to avail themselves of Louisiana *747 law which states that the owner of a closed estate has a right to obtain a right of ingress and egress.
Creager and the McDonalds argued that the damage should be calculated by using the pre-taking value of $12,000 per acre and subtracting the post-taking value of $500 per acre now that the land is landlocked. Thus, the landowners should be awarded $11,500 per acre. Their argument takes into account that the pre-taking value is the subject of a binding stipulation between the parties. Thus, the only calculation necessary requires the establishment of the post-taking value and subtracting that from the $12,000 per acre value to which the parties have already stipulated.
After considering all of the expert testimony, the trial court found that diminution of value was due partly to the expropriation and partly due to the fact that the remaining property is wetlands now and was wetlands before the taking. Ultimately, the trial court awarded $1,500 per acre in damages.
In Reasons for Judgment and at the hearing on the motion for new trial, the trial court found the landowners did not bear their burden of proof that the diminution of value in the property was caused by the expropriation. The court ultimately awarded $1,500 per acre in diminution of value based of the current value of $500 per acre and Mr. Oubre's testimony that he now believes the property was only worth $2,000 originally.
Although the trial court stated that all parties were bound by the stipulation that the value of the property prior to the expropriation was $12,000, it stated:
Mr. Oubre did testify, although contrary to his appraisal and the stipulation of the parties, that he believed the value of the property before the taking was only $2,000.00 per acre. Although the parties and this court are bound by their stipulations as to the values of the property, I interpret this statement of Mr. Oubre to mean that the portion of the diminution in value caused by the expropriation and land-locking of the remaining property is $1,500.00 per acre.
The trial court's interpretation of Mr. Oubre's testimony is unsupported. It is clear that Mr. Oubre reconsidered his 1990 appraisal of the property. His testimony was that he was wrong and that the value at that time was only $2,000. All parties agree that the current value is $500 per acre. Regardless of the phraseology of the Reasons for Judgment, it is clear that the trial judge used the $2,000 per acre pre-taking value in his calculation of diminution of value in contradiction to the stipulation. In his decision that the expropriation was not the cause of the diminution of value, the trial judge determined the character of the land was not changed as a result of the expropriation. It was wetlands before and after the taking. While that may be true, the determination of the nature of the land and its value before the taking is of no consequence at this point. The parties have stipulated that the value of the land pre-expropriation was $12,000, whatever its nature and use.
There is a clear stipulation that the value of the land prior to the expropriation was $12,000. A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it.[2] A stipulation has the effect of a judicial admission or confession, which binds all parties and the court. Stipulations between the parties in a specific case are *748 binding on the trial court when not in derogation of law. Such agreements are the law of the case.[3] It is well-settled that a stipulation amounts to full proof against those who made it. It has the effect of withdrawing a fact from issue and disposing wholly with the need for proof of that fact.[4]
We find that the trial court erred in allowing testimony as to the pre-taking value, given the stipulation of the parties. Further, we find the court's consideration of Mr. Oubre's testimony that the property value pre-taking was only $2,000 to be legal error by the trial court. Where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the reviewing court should make its own independent de novo review and assessment of the record, and we now conduct such a review.[5]
LSA-R.S. 48:453, in pertinent part, provides:
B. The measure of damages, if any, to the defendant's remaining property is determined on a basis of immediately before and immediately after the taking, taking into consideration the effects of the completion of the project in the manner proposed or planned.
C. The owner shall be compensated to the full extent of his loss. The court shall include in its consideration the difference between the rate of interest of any existing mortgage on an owner-occupied residence and the prevailing rate of interest required to secure a mortgage on another owner-occupied residence of equal value.
The only issue before the court was the award of severance damages due for the remaining property. Evidence of value is $12,000 by way of stipulation. All parties agree that the value of the land after the taking is $500. The measure of damages pursuant to the above-cited statute is the difference between the value immediately before and immediately after the taking. Accordingly, the devaluation amounted to $11,500 per acre. Accordingly, we find the trial court erred in finding the award to be $1,500 per acre, and we hereby vacate that judgment. We find the amount due Creager and the McDonalds is $11,500 per acre for the remaining 37.9223 acres. We hereby remand the matter to the trial court with an order to render a judgment consistent with this opinion.
REVERSED; JUDGMENT VACATED; MATTER REMANDED WITH ORDER.
NOTES
[1] R.H. Creager, Inc. is the predecessor of the current owner, Richard H. Creager, Sr.
[2] LSA-C.C. art. 1853.
[3] R.J. D'Hemecourt Petroleum, Inc. v. McNamara, 444 So.2d 600, 601 (La.1983), cert. denied, 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 39 (1984).
[4] Young v. Martinez, 98-674 (La.App. 5 Cir. 11/25/98), 722 So.2d 1143, 1145.
[5] Campo v. Correa, 2001-2707 (La.6/21/02), 828 So.2d 502.