MARION F. EDWARDS, Judge.
| ¡>The issue presented for our review in this appeal is whether a writ of mandamus can be issued to compel St. Charles Parish, plaintiff/appellee, to pay a judgment deriving from an expropriation of private property for levee and drainage purposes.
In July of 1990, St. Charles Parish (the Parish) filed a petition for expropriation of land that constituted portions owned by defendants/appellants, R.H. Creager, Inc. (Creager) and Dianne and David McDonald (McDonalds), for drainage improvement purposes. The following procedural history was set forth in a prior decision of this Court.[1]
In September of 1990, the parties entered into a stipulation that confirmed ownership of the property and the immediate need for the expropriation. In conjunction with that stipulation, the parties entered into a consent judgment that was signed on September 28, 1990. The judgment granted full ownership of the property to St. Charles Parish subject to a reservation of mineral rights in accordance with LSA-R.S. 31:149. The consent judgment also reserved the defendants’ rights to |3compensation, attorney’s fees, costs, and legal interest resulting from the expropriation.
On September 5, 1991, Creager and the McDonalds filed an answer and re-conventional demand in which they asserted that the expropriation of them land devalued the remainder of then-property by making it less desirable for commercial or industrial purposes. Creager and the McDonalds asserted that Parcel A-2 is located behind Dianne Place Subdivision and is bounded on the south by the Illinois Central Railroad, on the north by Louisiana and Arkansas Railroad, (now Kansas City Southern Railroad), on the east by land owned by a third party, and on the west by property owned by St. Charles Parish. The only legal access to the property before the expropriation was at its southerly boundary through a private crossing and servitude of access across the Illinois Central Gulf Railroad from the end of Janet Drive. Since the portion of the land expropriated by the parish included this crossing, the pleading sought damages for the expropriated land as well as severance damages for diminishment of value of surrounding land.
The parties conducted a lengthy discovery and, on February 22, 2005, Creager and the McDonalds filed a motion for summary judgment seeking $477,360 in severance damages based on the petition filed. The matter was heard on May 26, 2005. On September 13, 2005, the court rendered a judgment that declared that the judgment of September 28, 1990 constituted a taking by expropriation and that the judgment did not provide Creager and the McDonalds with a servitude or right of passage over the property. The judgment also declared that Creager and the McDonalds do not have legal access to the remainder of Parcel A-2 as a result of the *887 taking by expropriation. The issue of damages was referred to the merits of the trial.
On November 30, 2006, the parties entered into a joint stipulation of fact. The stipulation by the parties included the following:
1.) 16,410.18 square feet of Parcel A-2 was expropriated.
2.) The remaining portion of Parcel A-2 contains 37.9223 acres.
3.) Experts for both sides agree that the fair market value of Parcel A-2 immediately prior to the taking was $12,000.00 per acre.
4.) The amount of compensation due to defendants for the 16,410.18 square feet expropriated is $4,520.00.
5.) As a result of the taking, the defendants do not currently have legal access from the remainder of Parcel A-2 to a public road.
146.) Defendants have a right to seek legal access to the remainder of Parcel A-2.
The parties also made a joint offer of exhibits which included the comprehensive appraisals of experts for both sides and maps of the area.
After a trial on the merits, the trial court rendered judgment in favor of Creager and the McDonalds for $56,883.45. All parties have appealed that judgment.
On appeal, we reversed and vacated the judgment of damages awarded and ordered the trial court to enter a judgment awarding Creager and the McDonalds $11,500 per acre for the remaining 37.9223 acres in severance damages for the remaining property.[2] In accordance with that opinion and order, the trial court entered an order on November 20, 2008 in favor of Creager and the McDonalds in the amount of $436,106.45, together with legal interest thereon from the date of the judgment of taking on September 28, 1990, until paid, together with all costs of the proceedings. On that same date, the trial court signed a consent judgment in favor of Creager and the McDonalds awarding $209,839.92 in attorney’s fees, $6,669.59 in costs, and $10,350 in expert witness fees.
The Parish failed to pay the judgment and, on May 5, 2009, Creager and the McDonalds filed a petition seeking a writ of mandamus compelling the “Honorable V.J. St. Pierre, Jr., Parish President of St. Charles Parish and others to cause payment of the amount awarded in the final, definitive judgment.” The Parish answered and objected to the petition for a writ of mandamus, arguing a writ of mandamus is not permissible in this matter.
The trial court agreed with the objection of the Parish and rendered a judgment denying the mandamus with written reasons.

\-JLAW AND ANALYSIS

The parties do not contest the validity of the judgment. What is at issue is the manner in which the plaintiffs can enforce the judgment.
In general, the legislative intent as to the only manner of payment of judgments against the State is clear:
Any judgment rendered in any suit filed against the state, a state agency, or a political subdivision, or any compromise reached in favor of the plaintiff or plaintiffs in any such suit shall be exigi-ble, payable, and paid only out of funds appropriated for that purpose by the legislature, if the suit was filed against the state or a state agency, or out of funds appropriated for that purpose by the named political subdivision, if the *888 suit was filed against a political subdivision.[3]
There has been no appropriation of funds by the legislature for payment of this judgment. It is well settled that Louisiana courts may only issue a mandamus in an instance where the actions sought to be performed by the legislature are purely ministerial in nature. A purely ministerial duty is one in which nothing is left to discretion.[4] The act of appropriation of funds is discretionary and specifically granted to the legislature by the constitution.[5] Louisiana courts are without authority to issue a writ of mandamus directing the legislature to appropriate funds.[6]
Creager and the McDonalds acknowledge the above law. However, they point out that this matter does not involve a judgment resulting from a tort or contract suit in an action against a state agency. In fact, this is a taking of land in an expropriation action taken by a state agency, rather than against it as the above law encompasses. Creager and the Mc-Donalds assert that, because this case involves the just payment for land taken pursuant to the power of expropriation, a mandamus is the proper remedy for receiving fair and just compensation when the | (¡Parish will not pay the judgment. As support, they cite the Louisiana Constitution and the Home Rule Charter of St. Charles Parish, both of which give the Parish the right of eminent domain and compels the council to make fair and just compensation for any properties acquired in the exercise of these powers. They reason that the taking of land under the eminent domain power establishes a constitutional entitlement to just compensation for which a mandamus can issue.
The Parish counters that any judgment rendered against it can be satisfied by no procedure other than appropriation of funds by the legislature or political subdivision against which judgment is rendered even if the judgment comes as a result of the use of the power of eminent domain.
The trial court concluded that the arguments presented by Creager and the Mc-Donalds relating to the power of the court to issue mandamus in expropriation cases were unconvincing. In its Reasons for Judgment the trial court stated:
The argument is that certain provisions of the state Constitution, state laws, and language in the Home Rule Charter of St. Charles Parish make payment of “fair and just compensation” a ministerial duty. Creager bases this assertion on language in the Louisiana Constitution that states that in expropriation actions “the owner shall be compensated to the full extent of his loss.” La. Const. Art. (B)(1). Furthermore, Creager asserts that the St. Charles Parish Home Rule Charter specifically mandates a writ of mandamus in the case in Article III, Section A, 7d which states “The council shall make fair and just compensation for any properties in the exercise of its powers, duties, or functions.” Essentially Creager’s position is that the word “shall” is clear and unambiguous in making payment by the Parish mandatory.
However, the inclusion of the word “shall” does not seem to create the “ministerial duty” situation that is contemplated by the jurisprudence since it is clear that a writ of mandamus cannot *889 be used to compel a public entity to appropriate public funds to pay a judgment rendered against it....
Although Creager asserts that a ministerial duty arises from the word “shall” which would permit this court to issue a writ of mandamus, the law is clear that this ministerial duty arises when funds have already been appropriated by the legislature of there is no need 17to appropriate funds. This court cannot compel St. Charles to appropriate public funds to pay a judgment rendered against it.
(Emphasis as found in original.)
Creager and the McDonalds also argue that this case involves the expropriation of land for levee and drainage purposes which creates an exception to the prohibition of the use of mandamus to force the Parish to pay a judgment. Creager and the McDonalds cite La. Const, art. VI, § 42(A), which compels levee districts to levy taxes sufficient to pay for lands used or destroyed for levees if the district has no other funds or resources from which the payment can be made, and La. R.S. 88:301(C)(l)(a), which allows parishes outside of Orleans to expropriate land outside of regularly organized and acting levee districts, for the construction of drainage canals or drainage projects.
Creager and the McDonalds reason that, by willingly subjecting itself to the provisions of Louisiana law regarding expropriation of property for levee and drainage purposes, the Parish is bound as a defacto levee and drainage district. Creager and the McDonalds argue that by expropriation of their land for drainage purposes, the parish is bound by La. R.S. 38:390(B) which provides that a court must issue a writ of mandamus to compel payment of judgments that are not paid within sixty days.
The Parish asserts the above law and exception to the prohibition of mandamus does not apply to all entities expropriating land to build levees, but only to levee districts and levee and drainage districts. The Parish emphatically denies it is a de facto levee district.
The trial court analyzed the law and arguments and concluded that the levee constructed in the instant case is not the type of levee project to which the code and constitution refer. The trial court stated:
IsSimply put, St. Charles Parish is neither a levee board nor a levee district. St. Charles Parish contends that La. R.S. 38:513, which deals with levee districts that have actually merged with a parish, provides appropriate guidance. The statute gives a parish all of the powers of the levee district, but allows it to retain the superior police powers and immunities that it already possesses. La. R.S. 38:513(B) states that only certain provisions of this chapter applies [sic] to levee districts merged with the parish; La. R.S. 38:390 is not included in this list. The defendants urge that if the legislature does not allow mandamus to be utilized against an actual levee district merged with a parish, then it follows that 38:390 does not apply to a parish which simply constructs a levee.
(Footnote omitted.)
While we agree with the trial court that the actions taken by the Parish do not make it a “de facto ” levee district subject to the provisions of La. R.S. 38:513(B) and the mandamus power consistent with that law, we do believe the legislative intent of those statutes can be instructive in the matter before us.
When a levee district expropriates land, Louisiana law provides:
If the amount finally awarded exceeds the amount so deposited, the court shall enter judgment against the levee district or levee and drainage district and in favor of the persons entitled thereto for *890 the amount of the deficiency. The final judgment together with legal interest thereon shall be paid within sixty days after becoming final. Thereafter upon application by the owner or owners, the trial court shall issue a writ of mandamus to enforce payment.[7]
(Emphasis supplied.) By incorporating the mandamus power to compel payment of fair and just compensation into the proceedings for expropriation of land by levee boards, we believe the legislature intended that this be an exception to the general mandamus law. Furthermore, we note that the issuance of a mandamus by the trial court in that case is actually mandated by the legislature.
We also find some of the arguments presented by Creager and the McDonalds to be compelling. We believe the trial court erred in its reasoning by failing to consider that this matter does not involve a money judgment obtained |flagainst the Parish as the result of an action brought against the Parish in a tort or contract action. We find the fact that this matter results from an action taken pursuant to the Parish’s power of eminent domain requires a different analysis and outcome.
The right to sue the State in an action based in tort or contract law depends on the waiver of immunity found in La. Const, art. XII, § 10,[8] and begins with the basic principal that the State as a sovereign enjoys immunity from suit unless it gives its permission to be sued or waives its right under the Constitution.
By contrast, eminent domain is a right given to the State in derivation of a basic constitutional right of any citizen to private ownership of property. It is a basic constitutional principal that no person shall be deprived of life, liberty, or property, except by due process of law.[9] “ ‘Due process’ is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts. Thus, when governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process.”[10]
 | m“Every person has the right to acquire, own, control, use, enjoy, protect, *891 and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.”[11] One permissible exercise of police power is land use for drainage, flood control, and levees which benefit of the public generally.[12]
Our constitution provides:
(4) Property shall not be taken or damaged by any private entity authorized by law to expropriate, except for a public and necessary purpose and with just compensation paid to the owner; in such proceedings, whether the purpose is public and necessary shall be a judicial question.
(5) In every expropriation or action to take property pursuant to the provisions of this Section, a party has the right to trial by jury to determine whether the compensation is just, and the owner shall be compensated to the full extent of his loss. Except as otherwise provided in this Constitution, the full extent of loss shall include, but not be limited to, the appraised value of the property and all costs of relocation, inconvenience, and any other damages actually incurred by the owner because of the expropriation.[13]
(Emphasis supplied.)
The power of expropriation or eminent domain is the right of the State or its subdivisions to appropriate private property for public purposes, and is inherent in police power of state.[14] Clearly, St. Charles Parish had the right under the above-cited law to expropriate land owned by Creager and the McDonalds for use in the drainage and levee improvement project. However, the same law that affords the right of the Parish to exercise its police power compels the Parish to pay just and fair compensation, and to afford constitutional due process rights to citizens affected.
|n Expropriation laws are special and exceptional in character, in derogation of common rights, and, as such, must be strictly construed.[15] The purpose for that rule of law is obvious given that the power of expropriation is fraught with possibility of abuse and injustice.[16] Further, it is clear that compensation is required in expropriation cases, making it imperative that the Parish afford due process rights in this instance.
The Parish asserts that the judiciary is without authority to issue a writ of mandamus in any matter to enforce a money judgment against it unless the money for payment of the judgment has been specifically allocated. The Parish contends that rule of law applies even in cases, such as the one before us, where the Parish has expropriated private land, obtained title to it, and been cast in judgment for an exact amount of money damages. In support of that position, the Parish cites State, Dep’t of Transp. & Dev. v. Sugarland Ventures, Inc.,[17] We find that case to be distinguishable and not controlling.
In Sugarland, the State, through the Department of Transportation and Devel *892 opment, expropriated land from Sugarland Ventures, Inc. for the extension of an airport runway. A third party intervened in the suit seeking an award from the State for compensation based on their contract with Sugarland allowing them to haul dirt from portions of the subject property. The State ultimately abandoned the airport construction property. However, a judgment of expropriation and an award of damages were made final. The interven-ers filed a suit for declaratory judgment seeking, among other things, the following relief: (1) an order that the state pay the amount awarded by the trial court in the expropriation judgment; and (2) a declaration that the project’s abandonment did not affect the state’s obligation to |12pay the amount awarded. The First Circuit ruled against the interveners, concluding that “the state may, even after rendition of a final judgment in a Title 19 expropriation proceeding, declare its intention to abandon the public purpose behind the expropriation and decline to pay the amount awarded in compensation by the court.” [18]
The statement in Sugarland, that judgments rendered in expropriation suits can be satisfied by no other procedure than by an appropriation by the legislature, is found in a discussion of one of intervenors’ arguments that certain relevant statutes and constitutional articles are in conflict and are in violation of due process. This statement is neither a finding, nor a holding of the court. The First Circuit made that clear in the statement, “At the conclusion of the hearing below, the trial judge voiced his concern with the potential for abuse by the state in these circumstances. We share his concern. However, we are not called upon in this case to address those concerns.”[19]
This Court is now called upon to address these issues in the matter before us on appeal.
If we follow the reasoning of the Parish, the abuse and injustice is evident. Such a ruling would result in an outcome in an expropriation case that would allow the State to use its police powers to expropriate private land in deprivation of basic constitutional rights, be cast in judgment for the fair and just compensation of that property, and simply refuse to pay the judgment. Creager and the McDonalds would have, as the trial court determined, “a right without a remedy.” We find that outcome inconsistent with constitution principles, the body of law of eminent domain as set forth in the discussion in this opinion, and a violation of basic due process rights.
|1sWe recognize that the Louisiana constitution establishes a separation of powers among the three branches of government. Thus, our supreme court has stated that when litigants seek to invoke the power of the judiciary to compel another branch of government to perform or act, we must closely and carefully examine whether the action is within the confines of our constitutional authority.[20] However, a mandamus will lie against the State when the duty to be compelled is purely ministerial and not discretionary. We find the wording of the expropriation laws and the constitution set forth by the legislature make payment of fair and just compensation mandatory and not discretionary. Accordingly, we find the judiciary has the constitutional authority to issue a mandamus in this matter if warranted.
A writ of mandamus may be issued in all cases where the law provides no re *893 lief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice; provided, however, that no court shall issue or cause to be issued a writ of mandamus to compel the expenditure of state funds by any state department, board or agency, or any officer, administrator or head thereof, or any officer of the state of Louisiana, in any suit or action involving the expenditure of public funds under any statute or law of this state, when the director of such department, board or agency, or the governor shall certify that the expenditure of such funds would have the effect of creating a deficit in the funds of said agency or be in violation of the requirements placed upon the expenditure of such funds by the legislature.[21]
We find that payment of final judgments of damages in expropriation cases is a ministerial duty and not a discretionary one. We further find that, in this case, the law provides no relief by ordinary means and such an outcome would clearly violate constitutional due process. We also note there has been no argument by the Parish that the expenditure of these funds would create a deficit in the Parish funds. Accordingly, we find a mandamus may be properly issued for payment of the judgment in this ease.
| uFor the foregoing reasons, we reverse the ruling of the trial court and remand the matter with an order to the trial court to issue a mandamus in accordance with this opinion.

REVERSED AND REMANDED WITH ORDER.

. Parish of St. Charles v. R.H. Creager, Inc., 07-676 (La.App. 5 Cir. 2/6/08), 975 So.2d 742, 744, writ denied, 08-0777 (La.6/6/08), 983 So.2d 918.

. Parish of St. Charles v. R.H. Creager, Inc., supra.

. La. R.S. 13:5109(B)(2).

. Felix v. St. Paul Fire and Marine Ins. Co., 477 So.2d 676, 682 (La.1985).

. Hoag v. State, 04-0857 (La. 12/1/04), 889 So.2d 1019, 1024.

. Id. at 1025.

. La. R.S. 38:390(B).

. Suits Against The State
Section 10. (A) No Immunity in Contract and Tort. Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.
(B) Waiver in Other Suits. The legislature may authorize other suits against the state, a state agency, or a political subdivision. A measure authorizing suit shall waive immunity from suit and liability.
(C) Limitations; Procedure; Judgments. Notwithstanding Paragraph (A) or (B) or any other provision of this constitution, the legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages. It shall provide a procedure for suits against the state, a state agency, or a political subdivision and provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. The legislature may provide that such limitations, procedures, and effects of judgments shall be applicable to existing as well as future claims. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered.

. La. Const, art. I, § 2.

. Hannah v. Larche, 363 U.S. 420, 446, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960); Mary Moe, L.L.C. v. La. Bd. of Ethics, 03-2220 (La.4/14/04), 875 So.2d 22, 31.

. La. Const, art. I, § 4(A).

. La. Const, art. I, § 4(B)(2)(b)(iii).

. La. Const, art. I, § 4(B)(4), (5).

. Hobgood v. Parish of East Baton Rouge, 563 So.2d 413 (La.App. 1 Cir.1990), writ denied, 567 So.2d 105 (La.1990).

. Exxon Mobil Pipeline Co. v. Union Pacific R.R. Co., 09-1629 (La.3/16/10), 35 So.3d 192, 197.

. Kimble v. Bd. of Comm'rs for Grand Prairie Levee Dist., 94-1134 (La.App. 4 Cir. 1/19/95), 649 So.2d 1112, writ denied, 95-0405 and 95-0416 (La.4/7/95), 652 So.2d 1347.

. 476 So.2d 970 (La.App. 1 Cir. 1985), writ denied, 478 So.2d 909 (La. 1985).

. State, Dep’t of Transp. & Dev. v. Sugarland Ventures, Inc., 476 So.2d at 975.

. Id. at 976.

. Hoag v. State, 889 So.2d at 1024.

. La. C.C.P. art. 3862.