WATSON MEMORIAL     \*     NO. 2023-CA-0293
SPIRITUAL TEMPLE OF
CHRIST D/B/A WATSON     \*
MEMORIAL TEACHING          COURT OF APPEAL
MINISTRIES, CHARLOTTE     \*
BRANCAFORTE, ELIO          FOURTH CIRCUIT
BRANCAFORTE, BENITO     \*
BRANCAFORTE, JOSEPHINE          STATE OF LOUISIANA
BROWN, ROBERT PARKE,     \* \* \* \* \* \* \*
NANCY ELLIS, MARK
HAMRICK, ROBERT LINK,
CHARLOTTE LINK, ROSS
MCDIARMID, LAUREL
MCDIARMID, JERRY
OSBORNE, JACK STOLIER,
AND WILLIAM TAYLOR

**VERSUS**

GHASSAN KORBAN, IN HIS
CAPACITY AS EXECUTIVE
DIRECTOR OF THE
SEWERAGE AND WATER
BOARD OF NEW ORLEANS

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2022-10955, DIVISION "F-14"
Honorable Jennifer M. Medley
\* \* \* \* \* \*
**Judge Joy Cossich Lobrano**
\* \* \* \* \* \*
(Court composed of Judge Daniel L. Dysart, Judge Joy Cossich Lobrano, Judge
Karen K. Herman)

Randall A. Smith
Sarah A. Lowman
L. Tiffany Hawkins
Andre M. Stolier
SMITH & FAWER, L.L.C.
201 St. Charles Avenue, Suite 3702
New Orleans, LA 70170

      COUNSEL FOR PLAINTIFF/APPELLANT

Michael E. Botnick
Alex B. Rothenberg
GORDON ARATA MONTOGMERY BARNETT MCCOLLAM DUPLANTIS &
EAGAN, LLC
201 St. Charles Avenue, 40th Floor
New Orleans, LA 70170-4000

Craig B. Mitchell
Christopher D. Wilson
MITCHELL & ASSOCIATES, APLC
615 Baronne Street, Suite 300
New Orleans, LA 70113

Darryl Harrison
SEWERAGE & WATER BOARD OF NEW ORLEANS
625 St. Joseph Street, Room 201
New Orleans, LA 70165


COUNSEL FOR DEFENDANT/APPELLEE

**REVERSED AND REMANDED**

**DECEMBER 13, 2023**

This is a mandamus proceeding, wherein the prevailing parties in an inverse condemnation claim seek to compel payment of damages awarded at trial.

Plaintiffs/appellants (collectively, the "Neighbors")[1] appeal the February 8, 2023 judgment of the district court, which granted the exception of no cause of action filed by defendant/appellee, Ghassan Korban ("Korban"), in his official capacity as Executive Director of the Sewerage and Water Board of New Orleans ("SWB"). For the reasons that follow, we reverse and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

The Neighbors claim that SWB damaged and interfered with the Neighbors' use and enjoyment of their private homes and church during the Southeast Louisiana Urban Drainage Project (the "SELA Project"), which took place between 2013 and 2016. Multiple groups of residents, including the Neighbors, filed lawsuits to recover damages sustained in connection with the SELA Project.

---

[1] The Neighbors are listed as Watson Memorial Spiritual Temple of Christ d/b/a Watson Memorial Teaching Ministries; Charlotte, Elio, and Benito Brancaforte; Josephine Brown; Robert Parke and Nancy Ellis; Mark Hamrick; Robert and Charlotte Link; Ross and Laurel McDiarmid; Jerry Osborne; Jack Stolier; and Dr. William Taylor.

1

The facts of these claims are discussed in detail in this Court's opinion in *Lowenburg v. Sewerage & Water Bd. of New Orleans*, 19-0524 (La. App. 4 Cir. 7/29/20), --- So.3d ----, 2020 WL 4364345 ("*Lowenburg*"). Following a trial on the merits, the Neighbors were awarded $998,872.47 in cumulative damages for inverse condemnation, as well as attorneys' fees and costs, which ultimately totaled $517,231.03. The district court's finding, that SWB was liable to the Neighbors for inverse condemnation, was upheld by this Court on appeal. *See Lowenburg*, 19-0524, p. 14, --- So.3d at ----, 2020 WL 4364345 at *7.

Thereafter, SWB did not appropriate funds to satisfy the judgment rendered in the *Lowenburg* suit. In response, the Neighbors filed a separate lawsuit in federal district court, pursuant to 42 U.S.C. § 1983, alleging, among other things, that SWB's failure to pay the inverse condemnation judgment to the Neighbors constitutes a secondary taking under the Fifth Amendment of the United States Constitution. *See Ariyan, Inc. v. Sewerage & Water Bd. of New Orleans*, 543 F.Supp.3d 373, 375 (E.D. La. 2021), *aff'd*, 29 F.4th 226 (5th Cir. 2022), *cert. denied*, --- U.S. ---, 143 S.Ct. 353, 214 L.Ed.2d 170 (2022) ("*Ariyan*"). SWB and Korban filed a motion to dismiss for failure to state a claim, which the district court granted, and the U.S. Fifth Circuit affirmed on appeal, "applying long-standing precedent that there is no [federal constitutional] property right to timely payment on a judgment." *Ariyan*, 29 F.4th at 228.

On December 1, 2022, the Neighbors filed the current action in the district court by filing a "Petition for Writ of Mandamus and Writ of *Fieri Facias*." The

2

Neighbors argued that the damages awarded at trial for inverse condemnation were a just compensation award, pursuant to the Louisiana Constitution and the Fifth Amendment of the U.S. Constitution, but the SWB had failed to appropriate funds to satisfy the underlying judgments. According to the Neighbors, the constitutional duty to pay just compensation for the taking or damaging of property is a ministerial duty required by law, and the district court has the power and authority to issue a writ of mandamus directing the immediate payment of the just compensation award.

On December 27, 2022, Korban filed exceptions of *res judicata* and no cause of action. In the exception of no cause of action, Korban argued that the Louisiana Constitution prohibits seizure of State assets to satisfy money judgments, and such judgments may only be paid from funds appropriated by the legislature or the political subdivision against which the judgment was rendered. Under Korban's argument, courts may not order appropriation of funds through mandamus, as that power is reserved to the legislature.

A hearing on the exceptions went forward on January 27, 2023. The district court subsequently rendered judgment on February 8, 2023, which denied the exception of *res judicata*, granted the exception of no cause of action, and dismissed the Neighbors' claims against Korban with prejudice. This appeal follows.

## ASSIGNMENTS OF ERROR

On appeal, the Neighbors set forth the following assignments of error:

I. The District Court erred by granting Appellees' peremptory exception of no cause of action and dismissing Appellants' *Petition for Writ of Mandamus and Writ of Fieri Facias*.

II. The District Court erred in granting Appellees' exception of no cause of action on Appellants' petition for writ of mandamus, because just compensation is constitutionally required under both the state and federal constitutions; therefore, the duty to pay a just compensation award is a mandatory duty that is not subject to discretion, and thus properly subject to mandamus.

III. The District Court erred in granting Appellees' exception of no cause of action on Appellants' petition for writ of *fieri facias*, because the constitutional requirement that just compensation be paid in LA. CONST., art. I, § 4(B) is more specific than, and therefore supersedes, the requirement that judgments only be paid from voluntary appropriations under LA. CONST. art. XII, § 10(C).

## LAW AND ANALYSIS

**Exception of No Cause of Action**

The exception of no cause of action raises a question of law, and appellate courts review a district court's ruling on an exception of no cause of action *de novo*. *Herman v. Tracage Dev., L.L.C.*, 16-0082, 16-0083, p. 4 (La. App. 4 Cir. 9/21/16), 201 So.3d 935, 939. "The function of the peremptory exception of no cause of action is to test the legal sufficiency of the petition, which is done by determining whether the law affords a remedy on the facts alleged in the pleading." *State, Div. of Admin., Off. of Facility Plan. & Control v. Infinity Sur. Agency, L.L.C.*, 10-2264, p. 8 (La. 5/10/11), 63 So.3d 940, 945-46 (citing *Ramey v. DeCaire*, 03-1299, p. 7 (La. 3/19/04), 869 So.2d 114, 118). The mover bears the burden of showing that the petition states no cause of action. *Id.*, 10-2264, p. 9, 63 So.3d at 946. Under La. C.C.P. art. 931, no evidence may be introduced to support

4

or controvert the exception of no cause of action; thus, the trial court reviews the petition and accepts as true all well-pleaded allegations of fact. *Id.*, 10-2264, pp. 8-9, 63 So.3d at 946 (citing *Ramey*, 03-1299, p. 7, 869 So.2d at 118)(other citations omitted).

**Inverse Condemnation**

Pursuant to Article I, Section 4(B) of the Louisiana Constitution, "[p]roperty shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit." An inverse condemnation action provides a procedural remedy to a property owner seeking compensation for land already taken or damaged, against a governmental or private entity having powers of eminent domain, where no expropriation proceedings have commenced. *Faulk v. Union Pac. R.R. Co.*, 14-1598, p. 9 (La. 6/30/15), 172 So.3d 1034, 1043-44 (citing *Avenal v. State,* 03-3521, p. 26 (La. 10/19/04), 886 So.2d 1085, 1103-04)(other citations omitted). "Inverse condemnation claims derive from the Taking Clauses contained in both the Fifth Amendment of the U.S. Constitution and Article I, Section 4 of the Louisiana Constitution." *Id.*, 14-1598, p. 9, 172 So.3d at 1044. "Under the Louisiana Constitution, the action for inverse condemnation is available in all cases where there has been a taking *or damaging* of property when just compensation has not been paid, without regard to whether the property is corporeal or incorporeal." *Id.*, 14-1598, pp. 9-10, 172 So.3d at 1044 (footnote omitted)(emphasis in original).

The Louisiana Supreme Court pronounced a three-factor analysis to determine whether a property owner is entitled to "eminent domain compensation," wherein the court must:

(1) determine if a recognized species of property right has been affected;

(2) if it is determined that property is involved, decide whether the property has been taken or damaged in a constitutional sense; and

(3) determine whether the taking or damaging is for a public purpose under Article I, Section 4.

*Id.*, 14-1598, p. 10, 172 So.3d at 1044 (citing *State, Dep't of Transp. & Dev. v. Chambers Inv. Co.*, 595 So.2d 598, 603 (La. 1992); *Avenal*, 03-3521, pp. 26-27, 886 So.2d at 1104).

In *Lowenburg*, *supra*, this Court examined these factors and upheld the district court's finding that the Neighbors were entitled to damages pursuant to inverse condemnation.

**Mandamus**

"Mandamus is a writ directing a public officer … to perform" "a ministerial duty required by law." La. C.C.P. arts. 3861 and 3863. "A ministerial duty is one in which no element of discretion is left to the public officer, in other words, a simple definite duty, arising under conditions admitted or proved to exist, and imposed by law." *Lowther v. Town of Bastrop*, 20-01231, p. 3 (La. 5/13/21), 320 So.3d 369, 371 (internal quotations omitted). "If a public officer is vested with any element of discretion, mandamus will not lie." *Id.*

6

Importantly, the Louisiana Constitution enables the legislature to "limit or provide for the extent of liability of the state, a state agency, or a political subdivision." *Id.* (quoting La. Const. art. XII, § 10(C)). Specifically, under Article XII, Section 10(C), "[n]o judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered." *Id.* Moreover, under La. R.S. 13:5109(B)(2),[2] a judgment against the state or its political subdivision is only payable by funds appropriated for the purpose of satisfying that judgment. As a general matter, "[t]he very act of appropriating funds is, by its nature, discretionary and specifically granted to the legislature by the constitution." *Hoag v. State*, 04-0857, p. 7 (La. 12/1/04), 889 So.2d 1019, 1024.

Nevertheless, the Supreme Court has recognized that "[m]andamus may lie against a political subdivision when the duty to be compelled is ministerial and not discretionary." *Lowther*, 20-01231, p. 5, 320 So.3d at 372. "[T]he relevant consideration is 'whether the act of appropriating funds to pay the judgment … is a purely ministerial duty for which mandamus would be appropriate.'" *Id.* (quoting *Hoag*, 04-0857, p. 6, 889 So.2d at 1023). The Supreme Court acknowledged there are "specific limited exceptions wherein the duty to pay a judgment is

---

[2] "Any judgment rendered in any suit filed against the state, a state agency, or a political subdivision, or any compromise reached in favor of the plaintiff or plaintiffs in any such suit shall be exigible, payable, and paid only out of funds appropriated for that purpose by the legislature, if the suit was filed against the state or a state agency, or out of funds appropriated for that purpose by the named political subdivision, if the suit was filed against a political subdivision." La. R.S. 13:5109(B)(2).

7

constitutionally and statutorily mandated and therefore ministerial in nature."

*Crooks v. State Through Dep't of Nat. Res.*, 22-00625, p. 4 (La. 1/1/23), 359 So.3d

448, 451, *reh'g denied*, 22-00625 (La. 3/16/23), 362 So.3d 424. As the Court

explained:

> These constitutional and statutory provisions operate as *de facto* appropriations by the legislature irrespective of the general limitations set forth in La. Const. art. XII, § 10(C) and La. R.S. 13:5109(B)(2). *See Lowther*, 20-1231, p. 6, 320 So.3d at 372-73 (citing *Perschall v. State*, 96-0322, p. 22 (La. 7/1/97), 697 So.2d 240, 255). Where such provisions exist, courts are merely enforcing the positive law and not encroaching on functions constitutionally dedicated to the legislative branch. *Lowther*, 20-1231, p. 5, 320 So.3d at 372; *Hoag*, 04-0857, p. 4, 889 So.2d at 1022.

*Id.*

This case presents a *res nova* issue of law: whether payment of an inverse

condemnation judgment against a political subdivision is a ministerial duty. We

find that it is.

The Neighbors rely on *Parish of St. Charles v. R.H. Creager, Inc.*, 10-180,

p. 13 (La. App. 5 Cir. 12/14/10), 55 So.3d 884, 893, *writ denied*, 11-0118 (La.

4/1/11), 60 So.3d 1250 ("*Creager*"), which held that "payment of final judgments

of damages in expropriation cases is a ministerial duty and not a discretionary one"

such that "a mandamus may be properly issued for payment of the judgment in this

case." The *Creager* court recognized that the specific levee district statute, La. R.S.

38:513(B), and the mandamus power consistent with that law, were not directly

applicable where the parish was not a levee district. *Creager*, 10-180, p. 8, 55

So.3d at 889. Even so, the court found "the legislative intent of those statutes can

8

be instructive." *Id.* When a levee district expropriates land, La. R.S. 38:390(A) requires:

> If the amount finally awarded exceeds the amount so deposited, the court shall enter judgment against the levee district or levee and drainage district and in favor of the persons entitled thereto for the amount of the deficiency. The final judgment together with legal interest thereon shall be paid within sixty days after becoming final. Thereafter upon application by the owner or owners, the trial court shall issue a writ of mandamus to enforce payment.

Looking to this authority, the court further reasoned:

> By incorporating the mandamus power to compel payment of fair and just compensation into the proceedings for expropriation of land by levee boards, we believe the legislature intended that this be an exception to the general mandamus law. Furthermore, we note that the issuance of a mandamus by the trial court in that case is actually mandated by the legislature.

*Creager*, 10-180, p. 8, 55 So.3d at 890. The court was also persuaded that the judgment against the parish was not obtained in a contract or tort action; "the fact that this matter results from an action taken pursuant to the Parish's power of eminent domain requires a different analysis and outcome." *Id.*, 10-180, pp. 8-9, 55 So.3d at 890. Moreover, under the Takings Clause of the Louisiana Constitution, "the same law that affords the right of the Parish to exercise its police power compels the Parish to pay just and fair compensation, and to afford constitutional due process rights to citizens affected." *Id.*, 10-180, p. 10, 55 So.3d at 891.

According to the Neighbors, inverse condemnation – like expropriation – is a taking or damaging of a private property because of a public purpose as provided in Article I, Section 4 of the Louisiana Constitution, and the aggrieved property

owners must be subject to the same constitutional protections and benefit from the same ability to collect a judgment for a taking or damaging. This Court determined that "in cases where inverse condemnation rather than formal expropriation of property has taken place[,] … [t]here is no basis in Louisiana law for the different treatment of property owners in these two situations." *Avenal v. State*, 99-0127 (La. App. 4 Cir. 3/3/99), 757 So.2d 1, 12, *on reh'g* (3/15/00), *writ denied*, 00-1077 (La. 6/23/00), 767 So.2d 41. "The same substantive constitutional right (the right, secured by Art. I, § 4 of the 1974 Louisiana Constitution, to receive full compensation for the governmental taking of private property) is triggered by both." *Id.*

The Louisiana Supreme Court compared the "mandatory nature" of a hotel tax overpayment refund, pursuant to statutory and constitutional authority,[3] to the "compensation that is required in expropriation cases" finding mandamus the appropriate remedy to compel these ministerial duties. *Jazz Casino Co., L.L.C. v. Bridges*, 16-1663, pp. 10-11 (La. 5/3/17), 223 So.3d 488, 496 ("*Jazz*")(citing *Creager*, 10-180, p. 11, 55 So.3d at 891)(footnotes omitted). In doing so, the Court distinguished the overpayment refund proceeding "from cases requiring a legislative appropriation for payment of a judgment, *i.e.*, matters arising out of contract or tort." *Id.*, 16-1663, p. 11, 223 So.3d at 496 (footnote omitted). The Court further reasoned that a refund proceeding, "like an expropriation proceeding, implicates constitutional concerns involving the deprivation of property" and that

---

[3] *See generally* La. Const. art. VII, § 3(A) and La. R.S. 47:1621 *et seq.* (setting out the circumstances and procedure providing refund to the taxpayer for the overpayment of taxes).

"the issuance of a writ of mandamus ordering the Secretary [of the Department of Revenue] to use those funds does not violate the constitutional prohibition of seizing public funds." *Id.*, 16-1663, p. 12, 223 So.3d at 497.

Similarly, the Supreme Court compared the mandatory, ministerial duty to pay firefighters back wages[4] to the "appropriation of funds to pay judgment of damages in expropriation case … because the expropriation statutes and La. Const. art. I, § 4(B) make payment of fair and just compensation mandatory and not discretionary." *Lowther*, 20-01231, p. 5, 320 So.3d at 372 (citing *Creager*, 10-180, p. 13, 55 So.3d at 892-93). The Court again "distinguished the mandatory nature of paying judgments for tax overpayment refunds and expropriation compensation from the discretionary nature of paying judgments arising from matters of contract or tort." *Id.* (citing *Jazz*, 16-1663, pp. 10-11, 223 So.3d at 495-96).

SWB relies on *Newman Marchive Partnership v. City of Shreveport*, 07-1890 (La. 4/08/08), 979 So.2d 1262, for the general premise that the separation of powers doctrine prohibits issuing mandamus ordering seizure of public assets in satisfaction of money judgments. Nevertheless, *Newman Machive Partnership* was a breach of contract claim, which the Supreme Court acknowledged as distinct from a constitutional takings claim involving the mandatory duty to pay just compensation for deprivation of property rights. *See Lowther*, 20-01231, p. 5, 320 So.3d at 372; *Jazz*, 16-1663, pp. 10-11, 223 So.3d at 495-96.

---

[4] *See* La. Const. art. VI, § 14(A)(2)(e); La. R.S. 33:1992(A); La. R.S. 33:1992(B); and La. R.S. 33:1969 (governing firefighter compensation).

SWB further cites the recent Supreme Court case of *Mellor v. Parish of Jefferson*, 22-01713 (La. 9/1/23), 370 So.3d 388, rejecting a claim seeking mandamus for return of funds collected through the enforcement of an ordinance later found unconstitutional. *Mellor* declined to follow *Creager*, finding "no specific constitutional or statutory provision permits the trial court to order the defendants to remit [the disputed sum] into its registry[.]" *Id.*, 22-01713, p. 14, 370 So.3d at 397. Instead, the Court adhered to the general pronouncements of La. Const. art. XII, § 10 and La. R.S. 13:5109(B)(2) in determining that the Court lacked specific authority to issue mandamus ordering seizure of public funds to satisfy payment of a money judgment. *Id.*

We find *Mellor* dissimilar from the appeal before us, because, in *Mellor*, there was no holding that the funds collected under the ordinance resulted in a taking under La. Const. art. I, § 4, and neither the constitution nor statute permitted mandamus. Instead, we find this matter analogous to the expropriation issues resolved in *Creager* and followed in *Jazz*. We find it instructive that in *Creager*, the Takings Clause of the Louisiana Constitution governed and mandamus was proper, even though the expropriation statute was not directly applicable. Moreover, we are bound by this Court's pronouncement in *Avenal*, 99-0127, 757 So.2d at 12, that no reason exists to treat expropriation and inverse condemnation differently, as the same constitutional protections arise in both.

Under this reasoning, we find that payment of a judgment awarding just compensation for inverse condemnation, like a judgment awarding just

compensation for expropriation, is a ministerial duty, and we find that the Neighbors have stated a cause of action. We, therefore, reverse the judgment of the district court.

### Res Judicata

Lastly, we find no merit in Korban's argument that the district court's judgment should be upheld on the basis of *res judicata*.[5] Korban has failed to demonstrate with law or record evidence that the federal court judgment in *Ariyan* bars the instant state law claim for mandamus.

When filing suit in federal court, the Neighbors "invoked federal question jurisdiction, relying on their Fifth Amendment claim." *Ariyan*, 29 F.4th at 232. A state court must apply the federal law of *res judicata* when determining "the preclusive effects of a judgment rendered by a federal court exercising federal question jurisdiction." *St. Charles Surgical Hosp., LLC v. Louisiana Health Serv. & Indem. Co.*, 18-0052, p. 3 (La. App. 4 Cir. 3/21/18), 317 So.3d 854, 856 (quoting *Reeder v. Succession of Palmer*, 623 So.2d 1268, 1271 (La. 1993)). The *res judicata* effect of a prior judgment is a question of law, which is reviewed *de novo*. *Id.*, 18-0052, p. 3, 317 So.3d at 856-57 (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005)).

---

[5] Korban did not file an answer to the appeal, but seeks affirmation of the district court's judgment of dismissal on alternative grounds: *res judicata*. In the judgment currently before us on appeal, the district court granted Korban's exception of no cause of action, but it denied the exception of *res judicata*. Korban contends that, even if this Court were to reverse its ruling on the exception of no cause of action, this litigation should still be dismissed as barred by *res judicata*. "A party who does not seek modification, revision, or reversal of a judgment in an appellate court, including the supreme court, may assert, in support of the judgment, any argument supported by the record, although he has not appealed, answered the appeal, or applied for supervisory writs." La. C.C.P. art. 2133(B). *See also Slaughter v. Louisiana State Employees' Ret. Sys.*, 15-0324, pp. 3-4 (La. 10/14/15), 180 So.3d 279, 281-82.

*Res judicata* encompasses the doctrine of "claim preclusion," which "bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Test Masters Educ. Servs., Inc.*, 428 F.3d at 571. The test for *res judicata* has four requirements:

> (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions.

*Id.*

Korban argues the general premise that the Neighbors' state law claim seeking mandamus arises from the same underlying facts as the federal suit: that the Neighbors seek to compel payment of the unpaid judgment against SWB. While this may be true, we cannot find it sufficient, without more, under the jurisprudence. As the Supreme Court explained in *Reeder*, 623 So.2d at 1272-73:

> if a set of facts gives rise to a claim based on both state and federal law, and the plaintiff brings the action in a federal court which had "pendent" jurisdiction to hear the state cause of action, but the plaintiff fails or refuses to assert his state law claim, *res judicata* prevents him from subsequently asserting the state claim in a state court action, unless the federal court clearly would not have had jurisdiction to entertain the omitted state claim, or, having jurisdiction, clearly would have declined to exercise it as a matter of discretion.

*Ariyan* dismissed the federal Fifth Amendment takings claim, wherein the Neighbors asserted that nonpayment of the underlying judgment was a "second taking." *Ariyan*, 29 F.4th at 229. The federal district court and Fifth Circuit

concluded under a line of federal jurisprudence[6] that a government's failure to timely pay a judgment did not constitute a violation of a federal constitutional right. *Id.* at 230-32. "Without an underlying federal claim, or any other basis for jurisdiction asserted by the Plaintiffs, the district court properly declined to hear Plaintiffs' standalone claim to declaratory relief." *Id.* at 232.

Other Louisiana courts, following *Reeder*, have recognized that state law claims in a state action are not precluded by *res judicata*, where "although plaintiffs did not assert all of their state law claims in the federal proceeding, the federal court clearly would have declined to exercise its pendent jurisdiction over the omitted state law claims." *Morales v. Parish of Jefferson*, 10-273, pp. 7-8 (La. App. 5 Cir. 11/9/10), 54 So.3d 669, 673. Korban has failed to demonstrate that the federal court could have exercised jurisdiction over the state law mandamus claim, and we find no error in the district court's denial of his exception of *res judicata*.

### CONCLUSION

Accordingly, for the reasons set forth in this opinion, the judgment of the district court, which granted the exception of no cause of action and dismissed the Neighbors' Petition for Writ of Mandamus and Writ of *Fieri Facias*, is reversed, and this matter is remanded to the district court for further proceedings.

**REVERSED AND REMANDED**

---

[6] *See Folsom v. City of New Orleans*, 109 U.S. 285, 3 S.Ct. 211, 27 L.Ed. 936 (1883); *Minton v. St. Bernard Par. Sch. Bd.*, 803 F.2d 129 (5th Cir. 1986); *Freeman Decorating Co. v. Encuentro Las Americas Trade Corp.*, 352 F. App'x 921 (5th Cir. 2009).