# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 21, 2022

Lyle W. Cayce
Clerk

No. 21-30335

Ariyan, Incorporated, *doing business as* Discount Corner; M. Langenstein & Sons, Incorporated; Prytania Liquor Store, Incorporated; West Prytania, Incorporated, *doing business as* Prytania Mail Service/Barbara West; British Antiques, L.L.C., Bennet Powell; Arlen Brunson; Kristina Dupre; Brett Dupre; Gail Marie Hatcher; Betty Price; Et Al.,

*Plaintiffs—Appellants*,

*versus*

Sewerage & Water Board of New Orleans; Ghassan Korban, *In his Capacity as Executive Director of* Sewerage & Water Board of New Orleans,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:21-CV-534

Before Barksdale, Stewart, and Dennis, *Circuit Judges*.

James L. Dennis, *Circuit Judge*:

Plaintiffs who succeed in winning a money judgment against a state governmental entity in state court in Louisiana often find themselves in a

No. 21-30335

frustrating situation. Though they have obtained a favorable judgment, they lack the means to enforce it. The Louisiana Constitution bars the seizure of public funds or property to satisfy a judgment against the state or its political subdivisions. LA. CONST. art. XII, § 10(c). Instead, the Legislature or the political subdivision must make a specific appropriation in order to satisfy the judgment. *Id.*; La. R.S. 13:5109. And since Louisiana courts lack the power to force another branch of government to make an appropriation, the prevailing plaintiff has no judicial mechanism to compel the defendant to pay. *See Newman Marchive P'ship, Inc. v. City of Shreveport*, 979 So. 2d 1262, 1265 (La. 2008). The "plaintiff who succeeds in an action against a governmental unit thus becomes a supplicant," relying on the grace of the government to appropriate funds to satisfy her judgment. David W. Robertson, *Tort Liability of Governmental Units in Louisiana*, 64 TUL. L. REV. 857, 881 (1990).

Finding themselves in this position, the Plaintiffs in this case, like others before them, have turned to the federal courts to force payment on their state court judgment. They claim that the Defendants' failure to timely satisfy a state court judgment violates the Takings Clause of the Fifth Amendment. The district court granted the Defendants' motion to dismiss, applying long-standing precedent that there is no property right to timely payment on a judgment.

We agree and AFFIRM.

## I.

In 2013, the United States Army Corps of Engineers and the Sewerage and Water Board of New Orleans (the "SWB") began construction on a massive flood control project across Uptown New Orleans as part of the Southeast Louisiana Urban Flood Control Program ("SELA"). The Uptown phase involved the construction of underground box culverts that run the length of several major thoroughfares. Plaintiffs are seventy landowners,

No. 21-30335

including both businesses and private homeowners, who suffered property damage and economic loss as the result of SELA construction. The Plaintiffs filed suit in state court and obtained final judgments against the SWB for a combined $10.5 million. Some of these judgments became final in early 2018 and 2019, others as recently as fall 2020.

As of January 2021, though, the Plaintiffs had not received any payment from the SWB. So, in March 2021 they filed a § 1983 suit in district court under the theory that the SWB's failure to comply with the state court judgments "creates a secondary Constitutional violation of Plaintiffs' Fifth Amendment rights," more specifically a violation of their due process rights and their rights to just compensation for a taking. As relief, the Plaintiffs requested a writ of execution seizing the SWB's property in order to satisfy the judgments. Separately, the Plaintiffs' complaint sought a declaration that the SWB is contractually obligated to seek reimbursement from the Army Corps for the judgments via a procedure the two entities agreed to, called the "Damages SOP."

The SWB filed a motion to dismiss under Rule 12(b)(6) and the district court granted it. The court sympathized with the Plaintiffs' frustrations, but noted that there were "centuries of precedent" establishing that a state's failure to timely pay a state court judgment did not violate any federal constitutional right. With no underlying constitutional right at issue, Plaintiffs' § 1983 claim was "legally baseless." The district court also declined to exercise jurisdiction over Plaintiffs' request for declaratory relief as a standalone claim, citing the "particularly local nature of this dispute." Finally, the court denied Plaintiffs' generic request to amend their complaint should a failure to state a claim be found, holding that any amendment would be futile. Plaintiffs appealed.

No. 21-30335

## II.

We review dismissal of a case under Rule 12(b)(6) *de novo*, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff. *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 177 (5th Cir. 2018). "In the context of a 12(b)(6) motion in a section 1983 suit, the focus should be whether the complaint properly sets forth a claim of a deprivation of rights, privileges, or immunities secured by the Constitution or laws of the United States caused by persons acting under color of state law. If there is no deprivation of any protected right the claim is properly dismissed." *S. Christian Leadership Conf. v. Supreme Ct. of State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (internal citation omitted).

Ordinarily a district court's denial of a motion to amend a complaint is reviewed for abuse of discretion. *Stripling v. Jordan Prod. Co., LLC,* 234 F.3d 863, 872 (5th Cir. 2000). However, when denial is based on the futility of amendment, we "apply the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* at 873 (citation omitted). If the complaint, as amended, would be subject to dismissal, then amendment is futile and the district court was within its discretion to deny leave to amend. *Id.*

## III.

### A.

The Plaintiffs' claim is fairly discrete. They "do not seek to re-litigate the legal or factual issues or compensation awards decided in the state courts." Rather, their case "concerns an independent Takings Clause violation—the failure to timely pay just compensation once the compensation was determined and awarded." This nonpayment is,

4

No. 21-30335

according to the Plaintiffs, a "second taking," and the only one at issue in their case.[1]

More than a century ago, the Supreme Court decided the case of a pair of litigants in a similar situation as the Plaintiffs here. In *Folsom v. City of New Orleans*, 109 U.S. 285 (1883), two relators had obtained state court judgments against the City of New Orleans for property damage caused by riots in 1873. In 1879, a new state constitution limited the taxes New Orleans could levy to just enough to cover the City's budget. *Id.* at 287. The effect was that the relators were prevented from collecting on their judgments. *Id.* The relators argued that this state constitutional change deprived them of property without due process of law in violation of the Fourteenth Amendment. *Id.* The Supreme Court rejected the argument, agreeing that the judgments were property, but holding that "the relators cannot be said to be deprived of them so long as they continue an existing liability against the city." *Id.* at 289. In dissent, Justice Harlan wrote that an unenforceable judgment is no judgment at all. "Since the value of the judgment, as property, depends necessarily upon the remedies given for its enforcement, the withdrawal of all remedies for its enforcement, and compelling the owner to rely exclusively upon the generosity of the judgment debtor, is, I submit, to deprive the owner of his property." *Id.* at 295.

The *Folsom* majority's notion of a judgment as an "existing liability," conceptually distinct from its recovery, has only been reinforced in the intervening years. In *Minton v. St. Bernard Parish School Board*, this Court,

---

[1] In their complaint, Plaintiffs asserted a separate due process violation "because Defendants have treated them differently than non-litigants merely because Plaintiffs have exercised their constitutional right to file suit." Plaintiffs did not argue this claim in their briefs before the district court or in their briefs before this Court. It is therefore deemed abandoned. *Yohey v. Collins*, 985 F.2d 222, 224 (5th Cir. 1993).

citing *Folsom*, reiterated that "the property right created by a judgment against a government entity is not a right to payment at a particular time but merely the recognition of a continuing debt of that government entity." 803 F.2d 129, 132 (5th Cir. 1986). Based on that principle, we held that the government defendant's "failure to appropriate funds to pay the debt to the Mintons does not constitute a taking in violation of the due process clause." *Id.*

Again, in *Freeman Decorating Company v. Encuentro Las Americas Trade Corporation*, our Court held that there was no Takings Clause violation where the City of New Orleans failed to make timely payment on a state court judgment because there had been no taking of any property. "[T]he only property right [the plaintiff] has is the recognition of City's [*sic*] continuing debt." 352 F. App'x 921, 924 (5th Cir. 2009); *see also Guilbeau v. Par. of St. Landry*, 341 F. App'x 974 (5th Cir. 2009); *cf. Evans v. City of Chicago*, 689 F.2d 1286, 1297 n.13 (7th Cir. 1982) (distinguishing *Folsom* because Illinois Constitution created property right to immediate payment on a judgment). In short, "[a] party cannot be said to be deprived of his property in a judgment because at the time he is unable to collect it." *Folsom*, 109 U.S. at 289. Thus, Plaintiffs' claim that their property has been taken by the SWB's failure to timely pay must fail under *Folsom*.

The Plaintiffs try to get around this precedent in two ways. First, they argue that *Folsom* and its progeny are distinguishable because the underlying judgments in those cases sounded in state tort and contract law, while the Plaintiffs' judgments are based on violations of a federal constitutional right. But Plaintiffs' underlying state court cases were *not* based on any asserted federal right. As the SWB pointed out in briefing, and as the record shows, Plaintiffs' state court judgments were for violations of Louisiana law, not for violations of the Fifth Amendment Takings Clause as the Plaintiffs have asserted to this Court. But even if the underlying judgments were based on

violations of federal rights, we are not sure why that distinction would make a difference. After all, under Plaintiffs' theory, the SWB's failure to pay the judgments constitutes an "independent" or "second" Fifth Amendment taking of their property, namely the purported property right to be paid timely on a judgment. But since *Folsom* said there is no property right to timely payment on a judgment, there must be something special about a judgment based on federal constitutional rights that confers this additional property interest for the Plaintiffs' argument to succeed. Plaintiffs do not explain why the legal right underlying a judgment would create this additional property right for some judgments and not others, and it remains unclear to us. It seems that a judgment compensating someone for a breach of contract should confer no less a property interest than a judgment compensating someone for the police's excessive force.

*Vogt v. Board of Commissioners of Orleans Levee District*, 294 F.3d 684 (5th Cir. 2002), and *Lafaye v. City of New Orleans*, No. 2:20-CV-41, 2021 WL 886118 (E.D. La. Mar. 9, 2021), also do not aid the Plaintiffs in escaping *Folsom*'s holding. In *Vogt*, the Court stated in dicta that the governmental defendant's refusal to satisfy a judgment could constitute a taking. 294 F.3d at 697. But the judgment in that case was, in part, a declaratory judgment by the state courts that mineral royalties *in the government defendant's possession* were the property of the plaintiff. *Id.* at 688. The government's refusal to "pay over the retained royalties constitutes a taking because the governmental entity is withholding private property from its owners." *Id.* at 697. This situation, where the judgment debtor is in possession of property determined to belong to the creditor, is different from a judgment wherein the debtor owes compensation to the creditor. *Lafaye* turns on the exact same distinction. As the district court wrote in that case, "[b]oth *Vogt* and this case involve the government's refusal to return private property to its rightful owner." *Lafaye*, 2021 WL 886118, at *9. Plaintiffs' judgments here are for

compensation and damages, not for the return of private property that "the government has forcibly appropriated . . . without a claim of right." *Vogt*, 294 F.3d at 697.

Plaintiffs' second argument is that two Supreme Court cases—*Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985) and *Knick v. Township of Scott, Pennsylvania*, 139 S. Ct. 2162 (2019)—provide a federal forum for their claim. Plaintiffs misunderstand those cases. They are right that *Knick* and *Williamson County* discuss when a plaintiff may file a Takings Clause claim in federal court, but the cases say nothing about whether failure to timely pay a state court judgment constitutes a taking or any other deprivation of a federal right actionable under § 1983. Whether a claim is ripe for federal adjudication, as *Williamson County* and *Knick* decided, is very different from whether certain facts state a claim at all. Amici's citations to Supreme Court dicta that the Fifth Amendment is "self-executing" and that a property owner "acquires a right to compensation immediately upon an uncompensated taking" also fail to address the actual issue presented by Plaintiffs' appeal, namely whether a government's failure to timely pay a court judgment constitutes a taking in the first place. Neither *Williamson County* nor *Knick* speak to that question. Plaintiffs' § 1983 claim remains foreclosed by *Folsom*.

**B.**

Plaintiffs invoked federal question jurisdiction, relying on their Fifth Amendment claim, to bring this suit. With that claim dismissed, the district court declined to exercise jurisdiction over Plaintiffs' separate claim for a declaration of the parties' rights and duties under the Damages SOP. The Declaratory Judgment Act "does not of itself confer jurisdiction on the federal courts." *Jolly v. United States*, 488 F.2d 35, 36 (5th Cir. 1974). Without an underlying federal claim, or any other basis for jurisdiction

No. 21-30335

asserted by the Plaintiffs, the district court properly declined to hear Plaintiffs' standalone claim to declaratory relief.

As a final matter, the district court also properly declined to grant leave to Plaintiffs to amend their complaint. Though Rule 15(a)'s mandate that leave to amend must be "freely give[n] . . . when justice so requires" significantly limits a district court's discretion, a district court still acts within its bounds when it denies leave because amendment would be futile. FED. R. CIV. P. 15(a)(2). Futility here means "that the amended complaint would fail to state a claim upon which relief could be granted." *Stripling*, 234 F.3d at 873. The Plaintiffs did not specify what amendments they wished to make, or attach an amended pleading. Rather they simply asked for leave to amend "if their pleadings are found to be deficient in any manner." This failure to specify how amendment would cure the fundamental deficiencies in their pleading, especially when the core of Plaintiffs' claims is so clearly foreclosed by settled law, supports the district court's determination that amendment would be futile. *See Legate v. Livingston*, 822 F.3d 207, 212 (5th Cir. 2016). We cannot say the court abused its discretion.

## IV.

Like the district court, we understand the Plaintiffs' frustration. They have succeeded in winning a money judgment. Without any judicial means to recover, they are compelled "to rely exclusively upon the generosity of the judgment debtor." *Folsom*, 109 U.S. at 295 (Harlan, J., dissenting). But the Plaintiffs' case before the district court turned entirely on a purported property interest not recognized in Fifth Amendment jurisprudence. They therefore failed to state a claim for relief, and the district court properly dismissed their case.

We AFFIRM the district court's judgment.