# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 23, 2023

Lyle W. Cayce
Clerk

————————

No. 22-40663

————————

Gᴇᴏʀɢᴇ Mᴀʀᴛɪɴᴇᴢ,

*Plaintiff—Appellant*,

*versus*

Nᴜᴇᴄᴇs Cᴏᴜɴᴛʏ, Tᴇxᴀs; Wᴇʟʟ Pᴀᴛʜ, L.L.C.,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:21-CV-210

———————————————————————

Before Sᴍɪᴛʜ, Hɪɢɢɪɴsᴏɴ, and Wɪʟʟᴇᴛᴛ, *Circuit Judges*.

Jᴇʀʀʏ E. Sᴍɪᴛʜ, *Circuit Judge*:

George Martinez appeals the dismissal of his 42 U.S.C. § 1983 claims against Nueces County, Texas, and the denial of leave to amend his § 1983 claims against Wellpath, L.L.C.[1] Finding no error, we affirm.

I.

Martinez was incarcerated in the Nueces County Jail in September

---

[1] Wellpath is spelled in a variety of ways throughout the record, but because defendant spells its name as "Wellpath" in its appellate brief, we adopt that spelling.

No. 22-40663

2019.[2] He notified "[d]efendants"[3] that he had severe problems with his foot and had been scheduled for surgery. He alleges that he continued to submit complaints about "the increasingly horrific condition of his foot" and about his medications and antibiotics, but "[d]efendants continually ignored [his complaints] over a significant period of time." "As a result," Martinez's toe "exploded," and all his toes on that foot were "unnecessarily amputated/removed."

Martinez sued Nueces County and Wellpath for "County/Municipal [L]iability" under § 1983. Specifically, he alleged that the county was liable because it "sanctioned the custom, practice, and/or policy or procedure of failing to protect and/or ignoring the serious medical needs of those entrusted to [its] care." The original claim was not specific about how Wellpath was supposedly liable.

The county and Wellpath moved to dismiss. The district court granted both motions but permitted Martinez to file a "Motion for Leave to Amend his Complaint." Martinez did so and attached a proposed amended complaint, but the judge denied the motion, finding that any amendment would be futile. Martinez timely appeals the dismissal of his claim against Nueces County and the denial of leave to amend as to Wellpath.[4]

––––––––––––––––––––––––––––––

[2] All facts in this section are taken from plaintiff's live complaint.

[3] Martinez does not specify whom, exactly, he notified. His original complaint named as defendants Nueces County, Wellpath, and numerous other individuals who "were all medi[c]al person[nel] working for [Nueces] County and/or [Wellpath]."

[4] Martinez eventually agreed to dismiss the individual defendants. He does not appeal his own stipulation of dismissal. It also appears that he does not challenge the denial of leave to amend his claims against Nueces County or the original dismissal of his claims against Wellpath; he states he is appealing only the "*Order Granting Motions to Dismiss* as it pertains to County; and (b) *Order Denying Motion for Leave to Amend* as it pertains to Wellpath."

No. 22-40663

II.

We begin with the dismissal of the claims against Nueces County.

We review a dismissal *de novo*. *Lampton v. Diaz*, 639 F.3d 223, 225 (5th Cir. 2011). We ask whether, construing all inferences in favor of the plaintiff, there are sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). There is no "heightened pleading requirement" for actions against municipalities. *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999) (citing *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 166–67 (1993)). As with all motions to dismiss, the court must determine whether the plaintiff has pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" such that he has "'state[d] a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

Martinez alleged that Nueces County violated § 1983 by "acting with deliberate indifference to a substantial and known risk of harm to [p]laintiff," "ignoring [p]laintiff's serious medical needs," and "failing to impose proper and sufficient policies and/or procedures as to the screening, reassessment and medical treatment of inmates/detainees/arrestees in regard to their medical needs and/or training concerning same."

Nueces County cannot be held liable under § 1983 unless "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). This is an important distinction: A plaintiff may not recover against a municipality via theories of *respondeat superior*—the municipality itself must be responsible for the constitutional violation. To succeed, the

3

plaintiff must show "(1) an official policy (or custom), of which (2) a policy-maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). Such claims are referred to as *Monell* claims.

A *Monell* claim does not require the plaintiff to identify a written policy. In some situations, a plaintiff can succeed by pointing to similar incidents that are "sufficiently numerous" and have "occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Peterson v. City of Fort Worth*, 588 F.3d 838, 850–51 (5th Cir. 2009) (quotations omitted).

Martinez has attempted to plead *Monell* in this way, providing a list of examples that he claims support his allegations that Nueces County had a policy of "ignoring the serious medical needs of those entrusted to [its] care."[5] In *Bond v. Nueces County*, No. 20-40050, 2022 WL 4595000, at *5 (5th Cir. Sept. 30, 2022) (unpublished), we accepted this way of establishing a policy. But we cannot accept Martinez's version: Martinez fails because the pattern of examples must have "similarity" and "specificity." *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017). "Prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *McCully ex rel. Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (internal quotations removed).

---

[5] He lists 16 sparsely detailed incidents, such as "V.G. suffered from dehydration due to medical refusal in or around April of 2018."

No. 22-40663

Because Martinez's description of what happened to him is so vague, we cannot accept that the proffered examples are sufficiently similar to his own incident that the municipality can be found liable. Consider the above-referenced *Bond*, where the mother of the deceased Tami Bond sued Nueces County for policies that allegedly caused Tami's death. This court held there was "enough . . . [to] determine whether the past incidents were like Tami's death" because the complaint described what happened to Tami in sufficient detail. *Bond*, 2022 WL 4595000, at *6. For example, we outlined how officers "observed that Tami had seemingly become extremely intoxicated, stumbling and slurring her speech, but the officers did not have Tami medically reassessed or otherwise address the signs of a possible narcotics overdose." *Id.* at *2. We noted that Tami was "unwilling or unable to follow verbal commands," but officers put her into a "holding cell" instead of calling for assistance. *Id.* at *1. The specificity in that pleading allowed the court to say that the occurrence was similar enough to the previous incidents that the county's acquiescence in the pattern of previous incidents was the moving force behind Tami's injury.[6]

Not so here, where the entirety of Martinez's specific allegations is that "despite [Martinez's] numerous complaints concerning his medications, antibiotics, and . . . condition of his foot, Defendants continually ignored such over a significant period of time." The bar to survive a motion to dismiss is low, but not that low. On the face of these allegations, we cannot

---

[6] It is not the pattern alone that subjects the municipality to liability, but the municipality's action or inaction in the face of that pattern. *See Peterson*, 588 F.3d at 851 n.4 (noting that the pattern had not established "a municipal policy of using or condoning excessive force"). That action or inaction becomes the necessary 'policy' required for a *Monell* claim. "Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability." *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 415 (1997).

say that it is plausible that the county's policy, as distinguished from the isolated acts of the employees who interacted with Martinez, was responsible for what happened to Martinez.[7]

Because Martinez has not properly alleged a custom or policy that was the moving force of his injuries, the district court was correct to dismiss his claims against Nueces County.

## III.

We turn now to Wellpath. Martinez's initial complaint mentioned Wellpath only in passing and couched the rest of the complaint as against Nueces County. Accordingly, the district court dismissed the claims against Wellpath as failing to state a claim upon which relief could be granted, but the court gave Martinez permission to file a motion to amend his complaint. He did so and included a proposed amended complaint along with several exhibits related to his allegations against Wellpath.

The district court denied his request, finding that amendment would be futile. Martinez appeals only this denial of leave to amend. We review

---

[7] This is also why Martinez's complaints fail while Balle's (in *Balle v. Nueces County*, 952 F.3d 552 (5th Cir. 2017)) survived. Balle, who had a preexisting back injury and diabetes, was kicked twice in the back by the arresting officers and became paralyzed over the course of six days. His complaint outlined, in excruciating detail, the numerous employees who watched this process, repeatedly logged comments noting that Balle had "soiled himself," was "unable to clean himself," was "complaining of losing use of legs and in pain," "was paralyzed," and "could not walk," and yet refused to provide adequate medical treatment. *Id.* at 555. Martinez's complaint includes no such details—it is not even clear from the face of the complaint how long he was denied medical care.

We pause, however, to acknowledge that each of these cases involves events that occurred at Nueces County Jail. Our dismissal of Martinez's complaint indicates only that Martinez has not pleaded a claim with sufficient detail to survive a 12(b)(6) motion. Together, *Balle, Bond*, and *Martinez* paint a grim picture indeed of the conditions at Nueces County Jail. But this court cannot entertain claims pleaded without sufficient detail, and the events alleged against the defendant in other cases cannot affect our decision today.

denials of leave to amend for abuse of discretion bounded by the Federal Rules of Civil Procedure, *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 245 (5th Cir. 1997); but when a court denies leave to amend for futility of amendment alone, our analysis mimics that of a motion to dismiss. *Ariyan, Inc. v. Sewage & Water Bd. of New Orleans*, 29 F.4th 226, 229 (5th Cir. 2022). "If the complaint, as amended, would be subject to dismissal, then amendment is futile and the district court was within its discretion to deny leave to amend." *Id.* As with reviewing an order to dismiss, our review of denial of leave to amend is *de novo*. *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016).

We therefore ask whether, in his proposed amended complaint, Martinez has pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

We read Martinez's proposed amended complaint as alleging that Wellpath, as a state actor, had a pattern or policy of deliberate indifference as to adequate medical care, and that policy was the moving force behind a deprivation of Martinez's constitutional rights that led to his injury.

Assuming, without deciding, that a nationwide corporation such as Wellpath can be sued as a municipality,[8] we proceed to the merits. As with his claim against Nueces County, Martinez must show the existence of a policy or custom that was the moving force behind the violation of his constitutional rights. *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997).

Martinez has alleged a custom or policy of deliberate indifference.

---

[8] *See, e.g.*, *Olivas v. Corr. Corp. of Am.*, 215 F. App'x 332, 333 (5th Cir. 2007) (per curiam) (assuming without deciding the same).

Again, he can show this via a pattern that has "occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [Wellpath's] employees." *Davidson*, 848 F.3d at 396 (quoting *Peterson*, 588 F.3d at 850). And again, there is not enough detail in Martinez's complaint to clear this bar.

Martinez's proposed amended complaint included exhibits describing lawsuits, allegations, and investigations against Wellpath for injuries and deaths of inmates from medical negligence, along with allegations that Wellpath continuously prioritizes profit over quality medical care. The complaint concludes that "Wellpath, in an effort to make money, has a history of incompetence, failure to train, failure to provide even the basic care and has systemically denied, ignored and/or refused to provide medical care." That is not enough.

Wellpath is a nationwide company that operates in jails and other institutions across the country. Plaintiff's own exhibits state that the company operates in more than 500 facilities in 34 states and is responsible for around 300,000 people in custody every day.[9] The complaint does not allege a single instance of medical negligence (aside from his own) that occurred in Nueces County and that was caused by Wellpath.[10] In fact, it is unclear from the face of the complaint what exact role Wellpath even played at Nueces County. True, a plaintiff is not required to identify the precise policymaker

---

[9] *See, e.g.*, *Peterson*, 588 F.3d at 851–52 (discussing the importance of proportionality and the number of incidents necessary to establish a pattern against a larger organization).

[10] The incidents listed *supra* were alleged as evidence of Nueces County's liability—the complaint does not contend that Wellpath was involved, and nothing in the complaint states when Wellpath became involved with Nueces County.

to make out a *Monell* claim. *Balle*, 952 F.3d at 552. But he is required to "state a claim to relief that is plausible on its face,"[11] and from the face of Martinez's pleadings, there is no reason to conclude that Wellpath, at an organization-wide level, had a policy of deliberate indifference that was the moving force of Martinez's alleged constitutional violation at the Nueces County Jail. This is doubly so because of Martinez's failure to allege, with sufficient detail, what happened to him at the jail.

Martinez's sparse complaint and conclusory allegations would not survive a motion to dismiss. Denial of leave to amend was therefore proper.

The dismissal of the claims against Nueces County and denial of leave to amend the claims against Wellpath are thus AFFIRMED.

---

[11] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).